COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO. 2-07-103-CV

 

 

IN THE INTEREST OF
L.A.W.,

A MINOR CHILD

 

                                              ------------

 

            FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Appellants
Kenneth W. and Christina S. appeal the trial court=s order
terminating their parental rights to their child, L.A.W.  In two points, Kenneth contends that the
evidence is legally and factually insufficient to support termination and that
he was denied effective assistance of counsel at trial.  In one point, Christina contends that the
evidence is legally and factually insufficient to support termination.  Because we hold that the evidence is legally
and factually sufficient to support the termination of the parental rights of
Kenneth and Christina and that Kenneth has not met his burden of proving
ineffective assistance of counsel, we affirm the trial court=s order
of termination.

I.  Kenneth=s Appeal

A.  No Ineffective Assistance of Counsel

In his
second point, Kenneth contends that he was denied effective assistance of
counsel to the extent that trial counsel failed to preserve his points for
appellate review and waived his right to dismiss the termination proceedings
for lack of jurisdiction.

Kenneth
raises (1) the absence of findings of fact and conclusions of law and of a
record of the hearing on his motion for new trial and (2) an allegedly
deficient  statement of points that also
omits an ineffective assistance claim as potential ways trial counsel failed to
preserve his points for appeal.  We note,
although Kenneth does not, that his statement of points was filed sixteen days
after the order was signed and therefore was untimely.[2]  Nevertheless, his points are preserved.








In a
bench trial, the filed reporter=s record
preserves challenges to both the legal[3]
and factual[4]
sufficiency of the evidence.  Further,
this court has already held Athat
section 263.405(i) is . . . void as a violation of the separation of powers
provision of the Texas constitution@ and
thus not a bar to our consideration of issues not raised in a timely statement
of points.[5]  Trial counsel therefore did not commit
ineffective assistance by failing to preserve issues for appeal.

Kenneth
also argues that trial counsel was ineffective for not raising and therefore
waiving the trial court=s lack of jurisdiction to enter
a final order.  Kenneth did not raise
this issue in his motion for new trial, so we don=t have a
record explaining the trial counsel=s
decisions.  Our review of the record and
the law leads us to the conclusion that the trial court never lacked
jurisdiction before signing the final order. 

At the
time this suit was filed, section 263.401(a) of the family code provided,








Unless
the court has rendered a final order or granted an extension under Subsection
(b), on the first Monday after the first anniversary of the date the court
rendered a temporary order appointing the department as temporary managing
conservator, the court shall dismiss the suit affecting the parent‑child
relationship filed by the department that requests termination of the parent‑child
relationship or requests that the department be named conservator of the child.[6]

Kenneth
contends that the trial court lost jurisdiction on March 6, 2007 but entered
the order of termination on March 7, 2007. 
The record shows, however, that the trial court appointed Texas
Department of Family and Protective Services (Athe
State@) as
temporary sole managing conservator of L.A.W. on March 3, 2006.  Consequently, the first Monday after the
anniversary date of the order was March 5, 2007, the day trial began.  Before testimony began, the trial court said,

Okay.  Let me say I have got to stop at a little
before 4:00 today, so if you have got witnesses that can=t come back tomorrow or a
problem with coming back tomorrow, we need to put them on out of order if we
need to.

 

Trial
counsel made no objection.  At the end of
the day, after both the State and Christina had rested, Kenneth=s trial
counsel stated,








Your Honor, at this time
since you already indicated you=re going to take a recess here shortly, we would
ask for a recess to reconvene in the morning. 
We would like a C we have a possible
witness we would like to call in the morning.

 

The
State then indicated that an extension order would be needed and gave the trial
judge the order it had prepared, and the trial court signed it without
objection.[7]  The next day, Christina reopened her case,
and Kenneth rested without calling a witness. 
The trial ended, and the trial court entered the order of termination on
March 6, 2007, well within the 180-day extended limit.  Thus, the trial court had jurisdiction during
the trial and at the time the order was signed.[8]  Kenneth does not acknowledge the order of
extension in his brief, nor does he challenge his trial counsel=s
failure to object to the order or his trial counsel=s
strategic decision to ask for more time on March 6 to call a possible witness
when the other parties had already rested on March 5 within the original period
of jurisdiction.  Consequently, Kenneth
has not met his burden of proving ineffective assistance of counsel.[9]   We overrule Kenneth=s second
point.

B.  Legally and Factually Sufficient Evidence to
Support Termination








In his
first point, Kenneth contends that the evidence is legally and factually
insufficient to support termination.  The
trial court found by clear and convincing evidence that termination was in
L.A.W.=s best
interest and that Kenneth had knowingly placed or knowingly allowed her to
remain in conditions or surroundings which endanger the physical or emotional
well-being of the child, had engaged in conduct or knowingly placed L.A.W. with
persons who engaged in conduct which endangers the physical or emotional
well-being of the child, and Aha[d]
failed to comply with the service plan . . . and ha[d] continually engaged in
criminal activities.@[10]

As we
have explained in a similar case, 

Under section
161.001(1)(E) of the Texas Family Code, the term Aendanger@ means to expose to loss
or injury, to jeopardize.  Accordingly,
when analyzing a jury's findings pursuant to subsection (E), we must determine
whether sufficient evidence exists that the endangerment of the child's
physical well‑being was the direct result of the parent's conduct,
including acts, omissions, or failures to act. 
Termination under section 161.001(1)(E) must be based on more than a
single act or omission; a voluntary, deliberate, and conscious course of
conduct by the parent is required. 
However, it is not necessary that the parent's conduct be directed at
the child or that the child actually suffer injury.  The specific danger to the child's well‑being
may be inferred from parental misconduct standing alone.

 








To determine whether
termination is necessary, courts may look to parental conduct both before and
after the child's birth.  Further, a
father's conduct prior to the establishment of paternity may be considered as
evidence of an endangering course of conduct.  
Consequently, scienter is only required under subsection (E) when a
parent places the child with others who engage in an endangering course of
conduct.

 

As a general rule, conduct
that subjects a child to a life of uncertainty and instability endangers the
physical and emotional well‑being of a child.  Drug use and its effect on a parent's life
and his ability to parent may establish an endangering course of conduct.[11]


 

The
evidence showed that Kenneth began using methamphetamine  about five years before trial, that he
generally used it pretty often (about twice a week) when he was not
incarcerated, and that he continued using it until he was incarcerated in
January 2006, less than three weeks after L.A.W. was born.  He was still incarcerated at the time of
trial.  He admitted that every time he
used drugs during the pregnancy, he knew that he was increasing the chance that
he would not be around for L.A.W. after she was born, but he used them
anyway.  He also admitted using methamphetamine
after L.A.W. was born.  He agreed that he
perhaps emotionally endangered her by committing forgery during the pregnancy,
resulting in his absence from her life for about a year by the time of trial.








Kenneth
also testified that he had been in and out of jail for the past several years
and had been to the penitentiary twice, including his current term of
confinement.  He admitted that he was
unable to care for L.A.W. at the time of trial.








The case
of In re D.J.J.,[12]
cited by both parents, is distinguishable. 
There is no evidence in that case of any long-term drug abuse of the
father, of any  criminal history prior to
his arrest when the mother was pregnant with D.J.J., or of when he committed
the acts for which he was imprisoned.[13]  Additionally, unlike D.J.J.=s
father, who never lived with or saw D.J.J. before termination and was arrested
when D.J.J.=s mother was only three months
pregnant,[14]
Kenneth knew about Christina=s
pregnancy, chose to do drugs and commit other criminal offenses even though he
knew about the pregnancy and even though he was on parole, and chose to use
drugs after L.A.W. was born and was living with him.[15]  Based on the applicable standards of review,[16]
we hold that the evidence is legally and factually sufficient to support the
trial court=s finding as to Kenneth=s
endangering course of conduct.[17]  We do not reach Kenneth=s
complaints regarding the findings under subsection (D) and (O).[18]








Concerning
the best interest finding, in addition to the above evidence, Kenneth testified
that his parole date would be in June 2007, that he wanted to enter outpatient
drug treatment when he got out of prison, and that he wanted to find work at
that time.  He also testified that he had
no concerns about the care that L.A.W.=s foster
parents are providing and that she should stay with the foster parents until he
is Areleased
from jail and see if [he] actually deserve[s] to have a chance to get her back.@  He admitted that L.A.W. would not know him
and that she knows the foster parents as her mother and father.    The
foster mother testified that her husband is Christina=s
cousin, that L.A.W. had been placed with the couple in August 2006, that they
plan to adopt her if termination occurs, that L.A.W. is well adjusted and
happy, and that they would allow the birth parents to have contact with L.A.W.
in the future if they get past their drug problems.  The CPS caseworker testified that the foster
parents have a safe and appropriate home and that they provide excellent care
to L.A.W.  The maternal grandmother
testified that she had seen L.A.W. on several occasions and that L.A.W. has
bonded with the foster parents. 

Based on
the applicable standard of review,[19]
we hold that the evidence is legally and factually sufficient to support the
trial court=s best interest finding.  Because the evidence is legally and factually
sufficient to support the endangering course of conduct finding as well as the
best interest finding, it is also legally and factually sufficient to support
the termination of Kenneth=s
parental rights.  We overrule Kenneth=s first
point.

II.  Christina=s Appeal








Christina
also challenges the legal and factual sufficiency of the evidence to support
termination, but she does not challenge the best interest finding.  The trial court found by clear and convincing
evidence that Christina had  knowingly
placed or knowingly allowed L.A.W. to remain in conditions or surroundings
which endangered the physical or emotional well-being of the child, had engaged
in conduct or knowingly placed L.A.W. with persons who engaged in conduct which
endangers the physical or emotional well-being of the child, and had failed to
comply with the provisions of a court order that specifically established the
actions necessary for the return of L.A.W.[20]


The
trial court took judicial notice of its file. 
Julie Westlake, a caseworker for the State, had signed a sworn affidavit
supporting the initial March 2006 removal of L.A.W. from her parents.  In the affidavit, Julie stated that the State
had received a report alleging neglectful supervision of L.A.W.  Specifically, the informant stated that
Christina was trying to sell L.A.W. to earn money to purchase Aice@ with
and that Christina was using Aice@ and
selling the drug out of a mobile home park manager=s
office.  When the police arrived at the
mobile home in question, they did not find any evidence of drug activity, and
L.A.W. was not present.  They arrested
Christina on an outstanding warrant for the forgery offense she had committed
with Kenneth.  At trial, Christina
admitted that she had worked at the trailer park but denied that drugs were
being sold there. 








The
evidence shows that Christina began using methamphetamine four or five years
before trial, that it destroyed her marriage with the father of her two older
children, who are also in the State=s care,
and that she used methamphetamine twice a week with Kenneth until she found out
she was  four months pregnant with
L.A.W.  She testified that she stopped
using methamphetamine altogether when she found out she was pregnant.  A few weeks after L.A.W. was born, Christina
began using methamphetamine again. 

When
Christina was several months pregnant with L.A.W., she participated in a check
forging scheme with Kenneth.  In March
2006, when L.A.W. was less than three months old, Christina was arrested at the
mobile home and jailed for that offense. 
In June 2006, she was arrested and jailed for failing to appear in
court.  She was ultimately placed on
deferred adjudication community supervision for forgery in mid-August 2006 and
released from jail. 

The week
after she was placed on deferred adjudication community supervision, Christina
failed a drug test, testing positive for methamphetamine.  She admitted at trial that she had already
received the service plan and that using drugs violated the service plan.  The State filed a motion to adjudicate, and
Christina was placed back in jail in November 2006 to await the adjudication
hearing.  Christina testified that she
used drugs every day after she was released from jail in August until she was
incarcerated again in November. 








At the
time of the trial on termination, Christina remained in jail, although she
claimed that she was going to enter a plea the following week that would allow
her to get released.  Upon her release,
she wanted to enter inpatient drug rehabilitation.  She admitted that she had had a chance to do
that when she had been released on deferred adjudication community supervision
but had not followed through.

Christina
admitted that her drug use after L.A.W. was born endangered L.A.W.  Christina testified that she did not realize
that she had a problem with methamphetamine until she was released from jail in
August 2006, despite her testimony that Ait had
everything@ to do with the breakup of her
marriage two years earlier.  She also
admitted that she was addicted and that it had taken being locked up in jail to
stop her from using methamphetamine.  








Before her
confinement in jail, Christina used methamphetamine to cope.  She admitted that she was aware that using
drugs when responsible for taking care of a baby is dangerous, that she felt
that her drug use after L.A.W.=s birth
endangered the baby, and that she has not shown any ability to be able to hold
her life together and follow through in the care of her child.  She admitted that she had gone to jail
several times in the several years preceding trial, that she could understand
why the State and the trial court might be concerned with her stability in the
future, and that she has consistently chosen drugs over all three of her
children.  

Christina
had not seen L.A.W. since September 2006, approximately six months earlier, and
had not seen her more than five times since the case began a year earlier.  Christina admitted that she had chosen not to
see L.A.W. for some of the regularly scheduled visits even when not confined in
jail.  Christina also admitted that
L.A.W. was doing well with the foster parents but stated that she Awould
like the chance to get out and try to get her back.@  However, she agreed that she could not take
physical custody of L.A.W. at the end of trial if her rights were not
terminated but would need a period of transition.  She was Anot real
sure@ where
she would live after being released from jail, nor did she have any definite
information about job prospects.  She
admitted that being confined in jail and just being off drugs had not
rehabilitated her.

Christina,
unlike D.J.J.=s father, made a choice to
commit criminal offenses after she knew she was pregnant and after L.A.W. was
born and was living with her, chose to use methamphetamine frequently after
L.A.W.=s birth,
using daily from August to November when she was not in jail, chose not to see
her child after the removal on some occasions, and did not take advantage of
inpatient drug rehabilitation when it was offered to her.[21]









Based on
the applicable standards of review,[22]
we hold that the evidence is legally and factually sufficient to support the
trial court=s finding as to Christina=s
endangering course of conduct.[23]  We do not reach her complaints regarding the
findings under subsection (D) and (O).[24]  Because the evidence is legally and factually
sufficient to support the endangering course of conduct finding and because
Christina does not challenge the best interest finding, we hold that the
evidence is legally and factually sufficient to support the termination of
Christina=s parental rights.  We overrule Christina=s sole
point.

 

 

 

 

 








III.
Conclusion

Having
overruled all of Kenneth and Christina=s
points, we affirm the trial court=s order
terminating their parental rights.

 

PER
CURIAM

PANEL
F:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: March 20, 2008











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. '
263.405(b), (b-1) (Vernon Supp. 2007).





[3]Kissman v. Bendix Home Sys., Inc., 587 S.W.2d 675, 677-78 (Tex. 1979); see also Tex. R. App. P. 33.1(d).





[4]Tex. R. App. P. 33.1(d); Tex.
R. Civ. P. 324(a), (b); All Am. Builders, Inc. v. All Am. Siding of
Dallas, Inc., 991 S.W.2d 484, 487 n.3 (Tex. App.CFort
Worth 1999, no pet.).





[5]In re D.W., No. 02-06-00191-CV,
2008 WL 467328, at *12 (Tex. App.CFort Worth Feb. 19, 2008, no pet. h.) (en banc).





[6]Act effective Sept. 1, 1997, 75th Leg., R.S., ch. 600,
' 17, 1997 Tex. Gen. Laws 2108, 2113 (amended 2007)
(current version at Tex. Fam. Code Ann.
263.401(a) (Vernon Supp. 2007)).





[7]Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 268,
' 1.40, 2005 Tex. Gen. Laws 621, 636 (amended 2007)
(current version at Tex. Fam. Code Ann.
263.401(b) (Vernon Supp. 2007)).





[8]See id.





[9]See In re M.S.,
115 S.W.3d 534, 544, 549 (Tex. 2003).





[10]See Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O), (2) (Vernon 2002 & Supp.
2007). 





[11]In re R.W., 129
S.W.3d 732, 738-39 (Tex. App.CFort Worth 2004, pet. denied) (citations omitted).





[12]178 S.W.3d 424 (Tex. App.CFort
Worth 2005, no pet.).





[13]Id. at 426,
428-31.





[14]Id. at 426,
429.





[15]See In re H.G.H., No. 14-06-00137-CV, 2007 WL 174371, at *8 (Tex. App.CHouston
[14th Dist.] Jan. 25, 2007, no pet.) (mem. op.) (distinguishing D.J.J.
based on the father=s additional criminal offenses and choices he made
upon his release from the penitentiary when H.G.H. was six weeks old).





[16]See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); In re J.F.C.,
96 S.W.3d 256, 263-66 (Tex. 2002) (together providing legal sufficiency
standard of review); In re C.H., 89 S.W.3d 17, 25, 28 (Tex. 2002)
(providing factual sufficiency standard of review).





[17]See Tex. Fam. Code Ann. '
161.001(1)(E); R.W., 129 S.W.3d at 738-39.





[18]See Tex. Fam. Code Ann. '
161.001(1)(D), (O); Tex. R. App. P.
47.1; In re B.K.D., 131 S.W.3d 10, 16 (Tex. App.CFort
Worth 2003, pet. denied) (Along with a best interest finding, Aa
finding of only one ground alleged under section 161.001(1) is sufficient to
support a judgment of termination.@).  

 





[19]See Wilson,
168 S.W.3d at 827; J.F.C., 96 S.W.3d at 263-66 (together providing legal
sufficiency standard of review); C.H., 89 S.W.3d at 25, 28  (providing factual sufficiency standard of
review); Holley v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976)
(providing nonexclusive factors to consider in determining best interest).





[20]See Tex. Fam. Code Ann. ' 161.001(1)(D), (E), (O).





[21]See D.J.J.,
178 S.W.3d at 426, 428-31.





[22]See Wilson,
168 S.W.3d at 827; J.F.C., 96 S.W.3d at 263-66 (together providing legal
sufficiency standard of review); C.H., 89 S.W.3d at 25, 28 (providing
factual sufficiency standard of review).





[23]See Tex. Fam. Code Ann. '
161.001(1)(E); R.W., 129 S.W.3d at 738-39.





[24]See Tex. Fam. Code Ann. ' 161.001(1)(D), (O); Tex.
R. App. P. 47.1;  B.K.D.,
131 S.W.3d at 16 (Along with a best interest finding, Aa
finding of only one ground alleged under section 161.001(1) is sufficient to
support a judgment of termination.@).