

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-103-CV

IN THE INTEREST OF L.A.W.,
A MINOR CHILD

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellants Kenneth W. and Christina S. appeal the trial court's order terminating their parental rights to their child, L.A.W. In two points, Kenneth contends that the evidence is legally and factually insufficient to support termination and that he was denied effective assistance of counsel at trial. In one point, Christina contends that the evidence is legally and factually insufficient to support termination. Because we hold that the evidence is legally and factually sufficient to support the termination of the parental rights of

---

[1] *See* TEX. R. APP. P. 47.4.

Kenneth and Christina and that Kenneth has not met his burden of proving ineffective assistance of counsel, we affirm the trial court's order of termination.

## I. Kenneth's Appeal

## A. No Ineffective Assistance of Counsel

In his second point, Kenneth contends that he was denied effective assistance of counsel to the extent that trial counsel failed to preserve his points for appellate review and waived his right to dismiss the termination proceedings for lack of jurisdiction.

Kenneth raises (1) the absence of findings of fact and conclusions of law and of a record of the hearing on his motion for new trial and (2) an allegedly deficient statement of points that also omits an ineffective assistance claim as potential ways trial counsel failed to preserve his points for appeal. We note, although Kenneth does not, that his statement of points was filed sixteen days after the order was signed and therefore was untimely.[2] Nevertheless, his points are preserved.

In a bench trial, the filed reporter's record preserves challenges to both

---

[2] *See* Tex. FAM. CODE ANN. § 263.405(b), (b-1) (Vernon Supp. 2007).

the legal[3] and factual[4] sufficiency of the evidence.  Further, this court has already held "that section 263.405(i) is . . . void as a violation of the separation of powers provision of the Texas constitution" and thus not a bar to our consideration of issues not raised in a timely statement of points.[5]  Trial counsel therefore did not commit ineffective assistance by failing to preserve issues for appeal.

Kenneth also argues that trial counsel was ineffective for not raising and therefore waiving the trial court's lack of jurisdiction to enter a final order. Kenneth did not raise this issue in his motion for new trial, so we don't have a record explaining the trial counsel's decisions.  Our review of the record and the law leads us to the conclusion that the trial court never lacked jurisdiction before signing the final order.

At the time this suit was filed, section 263.401(a) of the family code provided,

Unless the court has rendered a final order or granted an extension

---

[3] *Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677-78 (Tex. 1979); *see also* TEX. R. APP. P. 33.1(d).

[4] TEX. R. APP. P. 33.1(d); TEX. R. CIV. P. 324(a), (b); *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 487 n.3 (Tex. App.—Fort Worth 1999, no pet.).

[5] *In re D.W.*, No. 02-06-00191-CV, 2008 WL 467328, at *12 (Tex. App.—Fort Worth Feb. 19, 2008, no pet. h.) (en banc).

under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.[6]

Kenneth contends that the trial court lost jurisdiction on March 6, 2007 but entered the order of termination on March 7, 2007. The record shows, however, that the trial court appointed Texas Department of Family and Protective Services ("the State") as temporary sole managing conservator of L.A.W. on March 3, 2006. Consequently, the first Monday after the anniversary date of the order was March 5, 2007, the day trial began. Before testimony began, the trial court said,

Okay. Let me say I have got to stop at a little before 4:00 today, so if you have got witnesses that can't come back tomorrow or a problem with coming back tomorrow, we need to put them on out of order if we need to.

Trial counsel made no objection. At the end of the day, after both the State and Christina had rested, Kenneth's trial counsel stated,

Your Honor, at this time since you already indicated you're going to take a recess here shortly, we would ask for a recess to reconvene in the morning. We would like a — we have a possible

---

[6] Act effective Sept. 1, 1997, 75th Leg., R.S., ch. 600, § 17, 1997 Tex. Gen. Laws 2108, 2113 (amended 2007) (current version at TEX. FAM. CODE ANN. 263.401(a) (Vernon Supp. 2007)).

4

witness we would like to call in the morning.

The State then indicated that an extension order would be needed and gave the trial judge the order it had prepared, and the trial court signed it without objection.[7] The next day, Christina reopened her case, and Kenneth rested without calling a witness. The trial ended, and the trial court entered the order of termination on March 6, 2007, well within the 180-day extended limit. Thus, the trial court had jurisdiction during the trial and at the time the order was signed.[8] Kenneth does not acknowledge the order of extension in his brief, nor does he challenge his trial counsel's failure to object to the order or his trial counsel's strategic decision to ask for more time on March 6 to call a possible witness when the other parties had already rested on March 5 within the original period of jurisdiction. Consequently, Kenneth has not met his burden of proving ineffective assistance of counsel.[9] We overrule Kenneth's second point.

**B. Legally and Factually Sufficient Evidence to Support Termination**

In his first point, Kenneth contends that the evidence is legally and

---

[7] Act effective Sept. 1, 2005, 79th Leg., R.S., ch. 268, § 1.40, 2005 Tex. Gen. Laws 621, 636 (amended 2007) (current version at TEX. FAM. CODE ANN. 263.401(b) (Vernon Supp. 2007)).

[8] *See id.*

[9] *See In re M.S.*, 115 S.W.3d 534, 544, 549 (Tex. 2003).

factually insufficient to support termination. The trial court found by clear and convincing evidence that termination was in L.A.W.'s best interest and that Kenneth had knowingly placed or knowingly allowed her to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, had engaged in conduct or knowingly placed L.A.W. with persons who engaged in conduct which endangers the physical or emotional well-being of the child, and "ha[d] failed to comply with the service plan . . . and ha[d] continually engaged in criminal activities."[10]

As we have explained in a similar case,

Under section 161.001(1)(E) of the Texas Family Code, the term "endanger" means to expose to loss or injury, to jeopardize. Accordingly, when analyzing a jury's findings pursuant to subsection (E), we must determine whether sufficient evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. Termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. However, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. The specific danger to the child's well-being may be inferred from parental misconduct standing alone.

To determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. Further, a father's conduct prior to the establishment of paternity

---

[10] *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O), (2) (Vernon 2002 & Supp. 2007).

6

may be considered as evidence of an endangering course of conduct. Consequently, scienter is only required under subsection (E) when a parent places the child with others who engage in an endangering course of conduct.

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.[11]

The evidence showed that Kenneth began using methamphetamine about five years before trial, that he generally used it pretty often (about twice a week) when he was not incarcerated, and that he continued using it until he was incarcerated in January 2006, less than three weeks after L.A.W. was born. He was still incarcerated at the time of trial. He admitted that every time he used drugs during the pregnancy, he knew that he was increasing the chance that he would not be around for L.A.W. after she was born, but he used them anyway. He also admitted using methamphetamine after L.A.W. was born. He agreed that he perhaps emotionally endangered her by committing forgery during the pregnancy, resulting in his absence from her life for about a year by the time of trial.

Kenneth also testified that he had been in and out of jail for the past

---

[11] *In re R.W.*, 129 S.W.3d 732, 738-39 (Tex. App.—Fort Worth 2004, pet. denied) (citations omitted).

several years and had been to the penitentiary twice, including his current term of confinement. He admitted that he was unable to care for L.A.W. at the time of trial.

The case of *In re D.J.J.*,[12] cited by both parents, is distinguishable. There is no evidence in that case of any long-term drug abuse of the father, of any criminal history prior to his arrest when the mother was pregnant with D.J.J., or of when he committed the acts for which he was imprisoned.[13] Additionally, unlike D.J.J.'s father, who never lived with or saw D.J.J. before termination and was arrested when D.J.J.'s mother was only three months pregnant,[14] Kenneth knew about Christina's pregnancy, chose to do drugs and commit other criminal offenses even though he knew about the pregnancy and even though he was on parole, and chose to use drugs after L.A.W. was born and

---

[12] 178 S.W.3d 424 (Tex. App.—Fort Worth 2005, no pet.).

[13] *Id.* at 426, 428-31.

[14] *Id.* at 426, 429.

was living with him.[15] Based on the applicable standards of review,[16] we hold that the evidence is legally and factually sufficient to support the trial court's finding as to Kenneth's endangering course of conduct.[17] We do not reach Kenneth's complaints regarding the findings under subsection (D) and (O).[18]

Concerning the best interest finding, in addition to the above evidence, Kenneth testified that his parole date would be in June 2007, that he wanted to enter outpatient drug treatment when he got out of prison, and that he wanted to find work at that time. He also testified that he had no concerns about the care that L.A.W.'s foster parents are providing and that she should stay with the foster parents until he is "released from jail and see if [he] actually

---

[15] *See In re H.G.H.*, No. 14-06-00137-CV, 2007 WL 174371, at *8 (Tex. App.—Houston [14th Dist.] Jan. 25, 2007, no pet.) (mem. op.) (distinguishing *D.J.J.* based on the father's additional criminal offenses and choices he made upon his release from the penitentiary when H.G.H. was six weeks old).

[16] *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d 256, 263-66 (Tex. 2002) (together providing legal sufficiency standard of review); *In re C.H.*, 89 S.W.3d 17, 25, 28 (Tex. 2002) (providing factual sufficiency standard of review).

[17] *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *R.W.*, 129 S.W.3d at 738-39.

[18] *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (O); TEX. R. APP. P. 47.1; *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (Along with a best interest finding, "a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination.").

9

deserve[s] to have a chance to get her back." He admitted that L.A.W. would not know him and that she knows the foster parents as her mother and father.

The foster mother testified that her husband is Christina's cousin, that L.A.W. had been placed with the couple in August 2006, that they plan to adopt her if termination occurs, that L.A.W. is well adjusted and happy, and that they would allow the birth parents to have contact with L.A.W. in the future if they get past their drug problems. The CPS caseworker testified that the foster parents have a safe and appropriate home and that they provide excellent care to L.A.W. The maternal grandmother testified that she had seen L.A.W. on several occasions and that L.A.W. has bonded with the foster parents.

Based on the applicable standard of review,[19] we hold that the evidence is legally and factually sufficient to support the trial court's best interest finding. Because the evidence is legally and factually sufficient to support the endangering course of conduct finding as well as the best interest finding, it is also legally and factually sufficient to support the termination of Kenneth's

---

[19] *See Wilson*, 168 S.W.3d at 827; *J.F.C.*, 96 S.W.3d at 263-66 (together providing legal sufficiency standard of review); *C.H.*, 89 S.W.3d at 25, 28 (providing factual sufficiency standard of review); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (providing nonexclusive factors to consider in determining best interest).

parental rights.  We overrule Kenneth's first point.

## II.  Christina's Appeal

Christina also challenges the legal and factual sufficiency of the evidence to support termination, but she does not challenge the best interest finding. The trial court found by clear and convincing evidence that Christina had knowingly placed or knowingly allowed L.A.W. to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, had engaged in conduct or knowingly placed L.A.W. with persons who engaged in conduct which endangers the physical or emotional well-being of the child, and had failed to comply with the provisions of a court order that specifically established the actions necessary for the return of L.A.W.[20]

The trial court took judicial notice of its file.  Julie Westlake, a caseworker for the State, had signed a sworn affidavit supporting the initial March 2006 removal of L.A.W. from her parents.  In the affidavit, Julie stated that the State had received a report alleging neglectful supervision of L.A.W.  Specifically, the informant stated that Christina was trying to sell L.A.W. to earn money to purchase "ice" with and that Christina was using "ice" and selling the drug out of a mobile home park manager's office.  When the police arrived at the mobile

---

[20] *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E), (O).

11

home in question, they did not find any evidence of drug activity, and L.A.W. was not present. They arrested Christina on an outstanding warrant for the forgery offense she had committed with Kenneth. At trial, Christina admitted that she had worked at the trailer park but denied that drugs were being sold there.

The evidence shows that Christina began using methamphetamine four or five years before trial, that it destroyed her marriage with the father of her two older children, who are also in the State's care, and that she used methamphetamine twice a week with Kenneth until she found out she was four months pregnant with L.A.W. She testified that she stopped using methamphetamine altogether when she found out she was pregnant. A few weeks after L.A.W. was born, Christina began using methamphetamine again.

When Christina was several months pregnant with L.A.W., she participated in a check forging scheme with Kenneth. In March 2006, when L.A.W. was less than three months old, Christina was arrested at the mobile home and jailed for that offense. In June 2006, she was arrested and jailed for failing to appear in court. She was ultimately placed on deferred adjudication community supervision for forgery in mid-August 2006 and released from jail.

The week after she was placed on deferred adjudication community supervision, Christina failed a drug test, testing positive for methamphetamine.

12

She admitted at trial that she had already received the service plan and that using drugs violated the service plan. The State filed a motion to adjudicate, and Christina was placed back in jail in November 2006 to await the adjudication hearing. Christina testified that she used drugs every day after she was released from jail in August until she was incarcerated again in November.

At the time of the trial on termination, Christina remained in jail, although she claimed that she was going to enter a plea the following week that would allow her to get released. Upon her release, she wanted to enter inpatient drug rehabilitation. She admitted that she had had a chance to do that when she had been released on deferred adjudication community supervision but had not followed through.

Christina admitted that her drug use after L.A.W. was born endangered L.A.W. Christina testified that she did not realize that she had a problem with methamphetamine until she was released from jail in August 2006, despite her testimony that "it had everything" to do with the breakup of her marriage two years earlier. She also admitted that she was addicted and that it had taken being locked up in jail to stop her from using methamphetamine.

Before her confinement in jail, Christina used methamphetamine to cope. She admitted that she was aware that using drugs when responsible for taking care of a baby is dangerous, that she felt that her drug use after L.A.W.'s birth

13

endangered the baby, and that she has not shown any ability to be able to hold her life together and follow through in the care of her child. She admitted that she had gone to jail several times in the several years preceding trial, that she could understand why the State and the trial court might be concerned with her stability in the future, and that she has consistently chosen drugs over all three of her children.

Christina had not seen L.A.W. since September 2006, approximately six months earlier, and had not seen her more than five times since the case began a year earlier. Christina admitted that she had chosen not to see L.A.W. for some of the regularly scheduled visits even when not confined in jail. Christina also admitted that L.A.W. was doing well with the foster parents but stated that she "would like the chance to get out and try to get her back." However, she agreed that she could not take physical custody of L.A.W. at the end of trial if her rights were not terminated but would need a period of transition. She was "not real sure" where she would live after being released from jail, nor did she have any definite information about job prospects. She admitted that being confined in jail and just being off drugs had not rehabilitated her.

Christina, unlike D.J.J.'s father, made a choice to commit criminal offenses after she knew she was pregnant and after L.A.W. was born and was living with her, chose to use methamphetamine frequently after L.A.W.'s birth,

14

using daily from August to November when she was not in jail, chose not to see her child after the removal on some occasions, and did not take advantage of inpatient drug rehabilitation when it was offered to her.[21]

Based on the applicable standards of review,[22] we hold that the evidence is legally and factually sufficient to support the trial court's finding as to Christina's endangering course of conduct.[23] We do not reach her complaints regarding the findings under subsection (D) and (O).[24] Because the evidence is legally and factually sufficient to support the endangering course of conduct finding and because Christina does not challenge the best interest finding, we hold that the evidence is legally and factually sufficient to support the termination of Christina's parental rights. We overrule Christina's sole point.

---

[21] *See D.J.J.*, 178 S.W.3d at 426, 428-31.

[22] *See Wilson*, 168 S.W.3d at 827; *J.F.C.*, 96 S.W.3d at 263-66 (together providing legal sufficiency standard of review); *C.H.*, 89 S.W.3d at 25, 28 (providing factual sufficiency standard of review).

[23] *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *R.W.*, 129 S.W.3d at 738-39.

[24] *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (O); TEX. R. APP. P. 47.1; *B.K.D.*, 131 S.W.3d at 16 (Along with a best interest finding, "a finding of only one ground alleged under section 161.001(1) is sufficient to support a judgment of termination.").

### III. Conclusion

Having overruled all of Kenneth and Christina's points, we affirm the trial court's order terminating their parental rights.

PER CURIAM

PANEL F:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: March 20, 2008

16