**ALL AMERICAN BUILDERS, INC., Appellant,**

v.

**ALL AMERICAN SIDING OF DALLAS, INC., d/b/a All American Products, Appellee.**

No. 2–98–198–CV.

Court of Appeals of Texas, Fort Worth.

May 6, 1999.

**486** ■ 

Paxton Beal & McGahey, L.L.P., Orsen E. Paxton, III, and Jeff S. Knotts, Arlington, for Appellant.

Arch M. Skelton, PC, Arch M. Skelton, Dallas, for Appellee.

Panel A: CAYCE, C.J.; LIVINGSTON and BRIGHAM, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

This is an appeal from the trial court's denial of permanent injunctive relief in a trademark infringement action. Both parties are competitors in the home remodeling industry; they install exterior siding. Appellant began operating under the name "All American Builders" prior to Appellee's use of the names "All American Products" and "All American Siding of Dallas, Inc." Appellant claimed trademark violation and sought permanent injunctive relief requiring Appellee to stop using the term "All American" in connection with the siding business. The trial court denied Appellant's request for permanent relief. Because we find no abuse of discretion, we affirm.

### BACKGROUND

Appellant began doing business in 1988 as All American Builders, and incorporated as All American Builders, Inc. (AA–Builders) the following year. In 1990, Appellee began selling and installing storm windows and siding under the name All American Products. In 1995, Appellee incorporated as All American Siding of Dallas, Inc. (AA–Siding) and ceased using the name All American Products. In 1996, AA–Builders' owner, Milton Nelson, heard a radio advertisement for AA–Siding. Because of the similarity in names and the fact that consumers routinely referred to AA–Builders by that name, Nelson applied for and received a Certificate of Trademark or Service Mark Registration for All American Builders, Inc. from the secretary of state. In that registration, AA–Builders stated that the name "All American Builders, Inc." was to be used in connection with "[e]xterior remodeling services for single-story buildings and their surroundings, and especially the application of siding ... and related accessories to single-family residences," and that "no other person to the best of [applicant's] knowledge ... has the right in this state to use such mark either in the identical form thereof,

or in such near resemblance to cause confusion, or to cause mistake or to deceive."[1]

After registering its mark,[2] AA–Builders requested that AA–Siding stop using the term "All American" in connection with the siding business, but AA–Siding refused. Consequently, AA–Builders brought both common law and statutory claims seeking a statewide permanent injunction restricting AA–Siding's use of "All American Products" or "All American Siding" in connection with exterior siding.

In a trial to the court, AA–Builders presented witnesses and other evidence to prove its case. While AA–Siding cross-examined witnesses, its only other evidence consisted of exhibits from four area telephone directories showing that the term "All American" was commonly used regarding a variety of services. The trial court denied AA–Builders' request for relief and this appeal followed. The record contains no written findings of fact or conclusions of law.

## STANDARD OF REVIEW

■ On appeal from a judgment either denying or granting a permanent injunction, the standard of review is clear abuse of discretion. *See 2300, Inc. v. City of Arlington,* 888 S.W.2d 123, 126 (Tex. App.—Fort Worth 1994, no writ). The question for the appellate court is whether the trial court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Simply because the

trial court decided a matter differently than the appellate court would under similar circumstances is not an abuse of discretion. *See id.* at 242.

■ In a single point, AA–Builders contends that "the trial court erred in issuing a judgment denying ... a permanent injunction ... because such decision is against the great weight of evidence presented and is a clear abuse of discretion."[3] Legal and factual sufficiency challenges are not independent grounds for reversal, but are factors to be considered in assessing whether the court has abused its discretion. *See Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). There is no abuse of discretion if the trial court bases its decision on conflicting evidence and some evidence supports the trial court's finding on an issue of fact. *See Griffin Indus., Inc. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 355 (Tex.1996); *Roa v. Roa,* 970 S.W.2d 163, 165 (Tex. App.—Fort Worth 1998, no writ). Likewise, we may not find an abuse of discretion merely because we would have decided a factual matter differently than the trial court. *See Roa,* 970 S.W.2d at 165. However, it is an abuse of discretion when the record demonstrates that the findings of the trial court necessary to sustain its order are not supported by some evidence. *See Operation Rescue v. Planned Parenthood,* 975 S.W.2d 546, 560 n. 56 (Tex.1998).

■ In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it.

1. Nelson knew at the time he filed for exclusive use protection that there was a corporation named All American Siding of Dallas, Inc. that was selling siding.

2. "Mark" means a word, name, symbol, device, slogan, or any combination thereof that, whether registered or not, has been used to identify a product or service and distinguishes that product or service from others. "Trademark" applies to products and "service mark" applies to services. *See* TEX. BUS. & COM.CODE ANN. § 16.01 (Vernon 1987). Ac-

cordingly, service marks and trademarks are governed by identical standards. *See Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1009 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

3. A party may raise complaints about the factual sufficiency of the evidence in a nonjury trial for the first time on appeal. *See* TEX.R. CIV. P. 324(a)-(b) (Vernon Supp.1999); *Regan v. Lee,* 879 S.W.2d 133, 135 (Tex.App.—Houston [14th Dist.] 1994, no writ).

*See Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex.1996). Where a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising sufficiency of the evidence points. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). Where the implied findings of fact are supported by the evidence, it is our duty to uphold the judgment on any theory of law applicable to the case. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

### TRADEMARK INFRINGEMENT

▮ Because AA–Builders invoked both statutory and common law grounds in seeking to enjoin AA–Siding's use of the names "All American Products" and "All American Siding," we will address each ground in turn, starting with the statutory action.

To obtain a statutory injunction for infringement, Appellant must prove that Appellee uses or reproduces a colorable imitation of a registered mark in connection with selling, offering for sale, or advertising goods or services when the use is likely to deceive or cause confusion or mistake as to the source or origin of the goods or services. *See* TEX. BUS. & COM.CODE ANN. § 16.26(a).

Kenneth Kirks, AA–Siding's owner, testified that AA–Siding was the only name his company had used since 1995. Because the evidence is undisputed that AA–Siding abandoned use of the name "All American Products," it is not necessary to determine whether the trial court erred in refusing a permanent injunction against AA–Siding's use of the name "All American Products" on statutory grounds.

We next address whether the trial court abused its discretion in refusing an injunction against AA–Siding's use of the name

"All American Siding" on statutory grounds. Section 16.27 provides that "[n]o registration under this chapter adversely affects common law rights acquired prior to registration under this chapter." TEX. BUS. & COM.CODE ANN. § 16.27(a). Because both parties used the phrase "All American" to identify their respective businesses for several years prior to April 22, 1996, when AA–Builders received a mark for the name "All American Builders, Inc.," and the statute preserves any common law rights of the parties acquired prior to registration, this case is essentially governed by the common law. *See id.* Therefore, we must look to the common law to determine whether the trial court abused its discretion in refusing an injunction against AA–Siding's use of the name "All American Siding."

▮ To succeed on a common law claim for trade name infringement, the party seeking an injunction must show: (1) the name it seeks to protect is eligible for protection; (2) it is the senior user of the name; (3) there is a likelihood of confusion between its mark and that of its competitor; and (4) the likelihood of confusion will cause irreparable injury for which there is no adequate legal remedy.[4] *See Thompson v. Thompson Air Conditioning and Heating, Inc.,* 884 S.W.2d 555, 558 (Tex. App.—Texarkana 1994, no writ); *Zapata Corp. v. Zapata Trading Int'l, Inc.,* 841 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1992, no writ) (citing *Union Nat'l Bank, Laredo v. Union Nat'l Bank, Austin,* 909 F.2d 839, 844 (5th Cir.1990)). The issues in a common law trademark infringement action under Texas law are no different than those under federal trademark law. *See Waples–Platter Cos.,* 439 F.Supp. at 583.

▮ The threshold issue is whether the word or phrase is initially eligible for

---

4. We disagree with AA–Siding that AA–Builders must also prove intent to defraud. In an action strictly based on trademark infringement, prior use of the trademark gives rise to a presumption of exclusive right of use; thus, it is unnecessary to prove an intent to defraud. *See Waples–Platter Cos. v. General Foods Corp.,* 439 F.Supp. 551, 574 (N.D.Tex. 1977).

protection. *See Union Nat'l Bank, Laredo*, 909 F.2d at 844. AA–Builders argues that because it was able to register "All American Builders, Inc.," and because in registering the mark, it disclaimed the terms "Builders" and "Inc." standing alone, such registration creates a rebuttable presumption that "All American" is eligible for protection. We disagree. Registration creates a rebuttable presumption that the party registering the mark is the owner thereof, and that the registration is valid and exclusive to the registrant.[5] *See* TEX. BUS. & COM.CODE ANN. § 16.15(c). Any advantage is only procedural. A rebuttable presumption shifts the burden of producing evidence to the party against whom it operates. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993). Once the burden is discharged and evidence contradicting the presumption has been offered, the presumption is extinguished and shall not be weighed or treated as evidence. *See id.* Furthermore, the presumption has no effect on the burden of persuasion. *See id.*

Nelson admitted on cross-examination that he knew before he registered for exclusive use protection that All American Siding of Dallas, Inc. existed and sold siding in the area. This is some evidence that AA–Builders did not have the exclusive right to use the mark at the time of registration. Also, AA–Siding introduced evidence consisting of pages from local telephone directories, showing that the phrase "All American" was used by a number of service and product providers. Examples include: "All American Industries," "All American Products," "All American Services," "All American Homes," and "All American Inspectors." This evidence was sufficient to contradict the presumption that AA–Builders' mark was protectable at the time it was registered. Therefore, AA–Builders' initial burden, not affected by any presumption, was to persuade the trial court that the term "All American" was eligible for protection.

Whether a word or phrase is eligible for protection is determined by the category to which it belongs: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary. *See Union Nat'l Bank, Laredo*, 909 F.2d at 844. The importance of assigning a term to one of the four categories is to determine whether or not, or in what circumstances, the term is eligible for protection. *See id.* "Generic" terms are *never* eligible for protection. *See id.* "Descriptive" terms may only be protected after proof of secondary meaning, while "suggestive" and "arbitrary or fanciful" terms are all protectable without proof of secondary meaning. *See id.; Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790–91 (5th Cir.1983). Assigning a term to a specific category is a difficult and imprecise task. *See, e.g., Zatarains*, 698 F.2d at 790. The categorization of a term is properly considered a question of fact because the appropriate categorization is not self-evident. *See Union Nat'l Bank, Laredo*, 909 F.2d at 846.

The categories are well defined, sometimes overlapping, points on a continuum ranging from strong to weak. *See id.* at 845–46; *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir.1987). The strongest marks are "arbitrary or fanciful:" words or phrases that are either coined, such as "Xerox," or that are not suggestive of the product or service, such as "Ivory," as applied to soap. *See Union Nat'l Bank, Laredo*, 909 F.2d at 845. Next on the continuum are "suggestive" terms, or those that require the consumer to draw a conclusion or exercise

5. A mark, valid and exclusive to the registrant, is nothing more than constructive notice in this state of the registrant's claim of ownership. *See* TEX. BUS. & COM.CODE ANN. § 16.15(b). Registered marks may be canceled upon a finding that the mark: (1) has been abandoned; (2) is not owned by the registrant; (3) was granted contrary to trademark law provisions; (4) was obtained fraudulently; or (5) has become incapable of serving as a mark. *See id.* § 16.16(4).

their imagination. These terms allude to rather than describe an attribute or characteristic of the good or service, such as "Igloo" in connection with an ice chest. *See id.* "Arbitrary or fanciful" and "suggestive" terms are given the greatest amount of protection because they are distinctive; they require no proof of secondary meaning. *See id.* at 844.

Moving on in ascending order of strength, next and last on the continuum are "descriptive" and "generic" terms. *See id.* at 844–45. "Descriptive" terms usually identify a characteristic or quality of the good or service. *See id.* at 845. Typically, these terms are adjectives, such as "speedy," "blue," or "reliable." *See id.* Geographical terms, such as "Texas" or "North Main" are also considered descriptive when they describe where the products or services are offered or manufactured. *See id.* "Descriptive" terms are eligible for protection only after proof that they have acquired a secondary meaning. *See id.* at 844.[6] "Generic" terms, the weakest marks, identify a class of things or services of which the item or service in dispute is simply a member. *See id.* at 845. For instance, the term "fruit" applies equally to apples, oranges, or grapes. "Generic" terms are not entitled to protection because the public interest would be disserved if a single competitor were allowed to prevent others from using a word that designates the good or service being offered. *See id.* at 844; *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 841 n. 19 (11 th Cir.1983).

AA–Builders' sole argument as to the threshold issue is that because "All American Builders, Inc." was registered, it is eligible for protection. But in order to persuade the trier of fact, AA–Builders' burden was to show that the phrase "All American" is eligible for protection by putting on evidence that the phrase is dis-

tinctive and requires no further proof of secondary meaning. Appellant neither contends nor points to any evidence supportive of such a contention. Alternatively, AA–Builders had to prove that "All American" is "descriptive," with the additional heavy burden of showing that the primary significance of the phrase in the minds of the consumers is siding, and not AA–Builders. We find no such argument in its brief, and no evidence in the record of secondary meaning in the minds of siding consumers.

Because the trial court's denial of injunctive relief could have been based on grounds that AA–Builders did not meet its burden of showing that the phrase "All American" is eligible for protection, we hold there was no abuse of discretion. Accordingly, we overrule AA–Builders' sole point.

### CONCLUSION

Having overruled AA–Builders' only point, we affirm judgment denying permanent injunctive relief.

---

6. In order to establish secondary meaning, the plaintiff must show that the primary significance of the term in the minds of the consuming public is not the product but the producer. *See Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). A high degree of proof is necessary to establish secondary meaning for a descriptive term. *See American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 12 (5 th Circ.1974).