HOT–HED, INC. and Cinaruco International, S.A.,
Appellants,

v.

SAFEHOUSE HABITATS (SCOTLAND), LTD.,
Appellee.

No. 01–09–00547–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 18, 2010.

Rehearing and Rehearing En Banc Overruled Jan. 24, 2011.

Bruce R. Coulombe, Frank Z. Lin, Guy E. Matthews, Matthews, Lawson & Bowick, PLLC, Justin McKenzie Waggoner, Smyser, Kaplan & Veselka, L.L.P., Houston, TX, for Appellants.

Bruce E. Ramage, Dale Jefferson, Douglas H. Elliott, Levon G. Hovnatanian, Martin, Disiere, Jefferson & Wisdom, L.L.P., William Bruce Patterson, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellants, Hot–Hed, Inc. and Cinaruco International, S.A. (collectively, "Hot–Hed"), appeal the trial court's grant of declaratory judgment against them in their suit for trademark infringement against appellee, Safehouse Habitats (Scotland), Ltd. ("Safehouse"). In four issues, Hot–Hed argues that the trial court erred in (1) entering declaratory judgment that the "Habitat" mark is not eligible for protection as a trademark under Texas or federal law; (2) awarding Safehouse attorney's fees under the Texas Uniform Declaratory Judgment Act (UDJA); (3) refusing Hot–Hed's timely request to issue findings of fact and conclusions of law on the attorney's fees award; and (4) declining to submit Hot–Hed's proposed special issue on statutory trademark infringement to the jury.

Safehouse also appeals the judgment of the trial court. In three issues, Safehouse argues that the trial court erred in (1) failing to either order the cancellation of Hot–Hed's Texas trademark registration or state that the term "habitat" "has become incapable of serving as a mark under section 16.16(a)(4)(e) of the Texas Business and Commerce Code"; (2) failing to direct the United States Patent and Trademark Office (USPTO) to dismiss Hot–Hed's proceedings before that office, or alternatively, failing to order Hot–Hed to abandon those proceedings; and (3) failing to speci-

fy an award of post-judgment interest in the judgment.

We modify and affirm as modified.

## Background

Hot–Hed, a Texas corporation involved with the development and manufacture of specialty products for the oil and gas industry, began selling inflatable welding enclosures using the mark "Habitat" in 1990. Hot–Hed obtained registration of the "Habitat" mark through the USPTO in 1991. It subsequently allowed the federal registration to lapse in 1998 when it failed to file an affidavit of continuing use with the USPTO five years after it registered the mark. However, Hot–Hed continued to market its welding enclosures using the mark "Habitat."

Safehouse, a Scottish private limited company, does business in Texas but has no regular place of business here. Safehouse designed and built its first flexible welding enclosures in 2001 and started selling them in 2002 under the name "Safehouse Habitats." Hot–Hed first learned of Safehouse and its welding enclosures at a trade conference in Houston in 2006. Conference attendees informed Hot–Hed that Safehouse was marketing a similar welding enclosure using the term "habitat."

In September 2005, Hot–Hed applied for a new federal registration of its "Habitat" mark, and in March 2006, Hot–Hed applied for registration of the trademark "Habitat" with the Texas Secretary of State. The Secretary of State issued a state trademark registration on May 30, 2006.

In March 2007, Safehouse timely filed a notice of opposition to Hot–Hed's application for federal trademark registration of the mark "Habitat" with the USPTO.

Meanwhile, on May 1, 2006, Hot–Hed sued Safehouse in Texas state court alleging Texas common law trademark infringement and unfair competition based on Safehouse's use of the term "habitat" for its welding enclosures. In subsequent amended petitions, Hot–Hed added causes of action for infringement of a registered Texas trademark and for injury to business reputation and trademark dilution under Texas Business and Commerce Code section 16.29.[1]

Safehouse attempted to remove Hot–Hed's state court action to federal court, arguing that Hot–Hed's claims presented a federal question. On appeal, the Fifth Circuit determined that no federal question was presented by Hot–Hed's claims against Safehouse and the cause was remanded to state court on February 12, 2007.

Safehouse counterclaimed in the state court suit, seeking "a judicial declaration [under the UDJA] that the term 'habitat' is not eligible for trademark protection under either state or federal law" and seeking to have Hot–Hed's Texas registration of the "Habitat" mark cancelled pursuant to Texas Business and Commerce Code sections 16.16 and 16.25.[2] Safehouse also petitioned for attorney's fees under

---

1. After it filed this suit, Hot–Hed transferred its rights to the "Habitat" mark to Cinaruco International, S.A., a Panamanian corporation and related entity also owned by Louis Wardlaw, and Cinaruco granted Hot–Hed an exclusive license to use the "Habitat" mark in the United States. After the transfer, Safehouse challenged Hot–Hed's capacity to sue for trademark infringement because of the assignment to Cinaruco. Cinaruco trans-ferred the rights to the mark back to Hot–Hed. Additionally, the second amended petition added Cinaruco as a plaintiff.

2. Safehouse also alleged that Hot–Hed attained its Texas trademark registration through fraud; however, Safehouse did not seek entry of judgment on this issue and does not raise any arguments regarding this cause of action on appeal.

Texas Business and Commerce Code section 16.25 and the UDJA. In its prayer, Safehouse asked that the trial court dismiss each of Hot–Hed's claims with prejudice and enter an order that Hot–Hed take nothing on those claims; declare that the term "habitat" is generic or descriptive and not eligible for protection under state or federal law; cancel Hot–Hed's Texas trademark registration for the term "Habitat"; and award it attorney's fees. It also generally prayed for "such other and further relief in law and equity to which it may show itself to be justly entitled."[3]

On July 22, 2006, Safehouse applied to the USPTO to federally register the mark "Safehouse Habitats," and, on August 19, 2008, the USPTO issued a federal trademark registration for "Safehouse Habitats."

On August 27, 2008, Hot–Hed filed a Petition of Cancellation asking the USPTO to cancel Safehouse's federal registration of "Safehouse Habitats."

Subsequently, the Trademark Trial and Appeals Board of the USPTO suspended the proceedings initiated by Hot–Hed to register "Habitat" on behalf of Hot–Hed and to cancel Safehouse's registration of "Safehouse Habitats," stating that the resolution of the issues in the state court litigation could have a bearing on the issues in the federal proceedings.

At trial of Hot–Hed's state court causes of action and Safehouse's counterclaims, both sides presented evidence regarding the use of the term habitat in relation to welding enclosures. Hot–Hed presented evidence that it possessed a registration from the Texas Secretary of State for the term "Habitat" when used in connection with inflatable welding enclosures. It also presented evidence that Safehouse had used the term "Habitat" in marketing its welding enclosures. Hot–Hed's founder, Louis Wardlaw, testified that he invented the term "Habitat" as it related to welding enclosures and that Hot–Hed was the first to use that mark to market inflatable welding enclosures. Hot–Hed also presented evidence that it had used the term "Habitat" continuously for twenty years and that it had at one time secured federal registration of the mark.

Safehouse presented evidence that, from their beginning in the 1960s, underwater welding enclosures were referred to as "welding habitats" and that the term had been in continuous use since that time to refer generally to welding enclosures, not just to Hot–Hed enclosures. Patents for other welding enclosures filed throughout the last three to four decades by third parties referred to the welding enclosures as "habitats." Safehouse also presented evidence that that term was used generally to refer to welding enclosures by oil and gas companies, by the Minerals Management Services of the United States Department of the Interior, and in an article entitled "Welding Hot Work Habitats" that addressed the use of welding "habitats" in New Zealand in 1990.

During the charge conference, Hot–Hed objected generally to jury questions one through four as they were submitted to the jury and filed two requested questions to replace the submitted questions. The instructions requested by Hot–Hed, and refused by the trial court, were unconditional questions. Question one asked whether the jury found it "more likely so than not" that Hot–Hed has a "Texas common law trademark for "HABITAT" that has been infringed by Safehouse." This

---

**3.** Safehouse's first amended answer and counterclaim was filed March 27, 2008, and named only Hot–Hed as a plaintiff. Hot–Hed entered its second amended petition adding Cinaruco as a plaintiff on April 21, 2008, and Safehouse never filed another amended answer and counterclaim.

proposed instruction defined trademark, listed the elements of common law trademark infringement, and included instructions on when marks are eligible for protection and explanations of other elements of common law trademark infringement. It likewise stated that Hot–Hed bore the burden of proof on the issue generally, but it provided that Safehouse had the burden of proving that Hot–Hed's "Habitat" mark was not eligible for protection by a preponderance of the evidence. The second proposed jury instruction addressed Hot–Hed's statutory cause of action for infringement of a Texas registered trademark. The trial court refused both of these proposed jury charges.

The first question the jury was asked to consider was, "Do you find that the term 'habitat' is eligible for protection as a trademark?" The instructions with question one defined "trademark," stated that Hot–Hed or Cinaruco had the burden of proving whether the term "habitat" was eligible for protection, and explained the requirements for determining whether a term is eligible for protection. The jury answered "No." Jury questions two through nine were contingent on the answer to jury question number one. Because the jury determined that "habitat" was not eligible for trademark protection, it did not answer any of these questions regarding the remaining elements of the parties' claims.

Jury question ten asked, "Do you find that Defendant Safe House is entitled to the recovery of its reasonable and necessary attorney's fees from Hot–Hed, Inc. and/or Cinaruco International, S.A.?" The jury answered "Yes" for both Hot–Hed and Cinaruco. Jury question eleven asked, "Do you find more likely than not that Safe House's use of the "HABITAT"

trademark will cause irreparable injury to the trademark owner? The trademark owner has the burden of proof for this issue by a preponderance of the evidence." The jury answered, "No." The verdict was returned by ten of the twelve jurors.

Safehouse moved for entry of judgment, asking the trial court to enter a take-nothing judgment against both Hot–Hed and Cinaruco on all four of their affirmative claims. Safehouse also asked that the trial court enter a judgment declaring that the term "habitat" was not eligible for trademark protection under either state or federal law and that "habitat" has become incapable of serving as a mark, and ordering the cancellation of Hot–Hed's Texas registration of the term. In addition, Safehouse's proposed judgment asked the trial court to instruct the USPTO and Hot–Hed to dismiss Hot–Hed's proceeding against Safehouse, to cancel its registration of the mark "Safehouse Habitats," and to instruct the USPTO to refuse to register "habitat" as a trademark in Hot–Hed's application for federal registration of the term. Finally, Safehouse requested attorney's fees based on the parties' stipulation that the amount of reasonable and necessary attorney's fees incurred by Safehouse through trial was $1,255,000, and it requested that the trial court assess costs against Hot–Hed and Cinaruco jointly and severally.[4]

The trial court signed its judgment on April 20, 2009. It ordered "that Plaintiffs HOT–HED, INC. and CINARUCO INTERNATIONAL, S.A. take nothing on each of the claims against" Safehouse, declared that "the term 'habitat' is not eligible as a trademark under Texas or Federal law, namely the Lanham Act, Title 15 of the United States Code," and ordered that

4. The stipulation was entered on the record during trial by both sides as to the amount of

reasonable and necessary fees only.

Safehouse recover from Hot–Hed and Cinaruco, jointly and severally, attorneys fees of $1,255,000, with additional attorney's fees in the event of an appeal.[5]

On May 29, 2009, Hot–Hed requested findings of fact and conclusions of law on the trial court's award of attorney fees, citing the timeliness of Texas Rule of Civil Procedure 297. On June 24, 2009, the trial court denied Hot–Hed's request for findings of fact and conclusions of law.

On June 11, 2009, Hot–Hed moved for judgment notwithstanding the verdict, and on June 19, 2009, Hot–Hed moved for new trial. The trial court denied both of these motions on July 27, 2009. Both Hot–Hed and Safehouse appealed.

### Validity of Safehouse's Declaratory Judgment Counter–Claim

In its first issue, Hot–Hed argues that the trial court erred in entering declaratory judgment that the "Habitat" mark is not eligible for protection as a trademark under Texas or federal law. Hot–Hed argues in part that the trial court erred in entering this judgment because (1) eligibility for protection was already an element of its claim for trademark infringement and (2) the matter on which Safehouse sought a declaration was subsumed within Safehouse's action to cancel the trademark registration, which constituted a matured remedy at law.

■■■ The UDJA provides that:

A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 2008); *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship,* 170 S.W.3d 272, 278 (Tex.App.-Dallas 2005, no pet.). Declaratory judgment is appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration. *Adams v. First Nat'l Bank of Bells/Savoy,* 154 S.W.3d 859, 873 (Tex.App.-Dallas 2005, no pet.) (citing *Scurlock Permian Corp. v. Brazos County,* 869 S.W.2d 478, 486 (Tex. App.-Houston [1st Dist.] 1993, writ denied)). A trial court may refuse to render or enter a declaratory judgment if the judgment will not terminate the uncertainty or controversy giving rise to the proceedings. *Id.* (citing *Scurlock,* 869 S.W.2d at 486).

■■■ The UDJA is "not available to settle disputes already pending before a court." *Id.* (quoting *BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex. 1990)). "Ordinarily declaratory relief will not be granted where the cause of action has fully matured and invokes a present remedy at law," and "declaratory judgment is improper if the relief requested is raised for the first time in an amended petition and merely addresses the same issues as were raised in the original petition." *Prestige Ford,* 170 S.W.3d at 278.

■■■ "In certain instances, however, a defensive declaratory judgment may present issues beyond those raised by the plaintiff." *Indian Beach Prop. Owners' Ass'n v. Linden,* 222 S.W.3d 682, 701 (Tex. App.-Houston [1st Dist.] 2007, no pet.); *see also Millard,* 800 S.W.2d at 842 (holding

---

5. On May 20, 2009, Safehouse moved to modify or reform the judgment, arguing that the trial court's judgment should include the order cancelling Hot–Hed's Texas registration of "Habitat" and ordering the dismissal or denial of the USPTO proceedings.

that defensive declaratory judgment counter-claim that has greater ramifications than original suit is proper). "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *Linden*, 222 S.W.3d at 701 (quoting *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex.1990)).

█ Fact issues in declaratory judgment proceedings may be tried and determined in the same manner that issues of fact are tried and determined in other civil actions. *Id.* at 699 (citing Tex. Civ. Prac. & Rem.Code Ann. § 37.007). "The power to determine an issue of fact, however, 'does not concomitantly carry with it the power to render such a finding of fact as a declaratory judgment.'" *Id.* (quoting *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 140 (Tex.App.-El Paso 1997, pet. denied)). If a factual dispute is the only issue to be resolved, a declaratory judgment is not the proper remedy. *Id.*

█ Here, Hot–Hed alleged causes of action for common law trademark infringement, unfair competition, statutory infringement of a registered Texas trademark, and injury to business reputation and trademark dilution—all causes of action relating to Texas law. Safehouse's counterclaim under the UDJA sought a declaration from the trial court that would encompass both state and federal eligibility of the term "Habitat" for trademark protection and provide a ruling from the trial court that would dispose of proceedings between Hot–Hed and Safehouse in the USPTO. Thus, Safehouse could elect to seek a declaratory judgment and an adjudication of rights on which it could obtain relief. This counterclaim constituted more than a request that the trial court

repeat a factual finding. *See id.* at 699–701.

We conclude that Safehouse's declaratory judgment counterclaim stated a claim for affirmative relief and was the proper subject of a declaratory judgment.

### Propriety of Trial Court's Declaratory Judgment

Hot–Hed also argues in its first issue that the trial court erred in entering declaratory judgment that the term "habitat" was ineligible for trademark protection under either Texas or federal law because (1) Safehouse failed to secure jury findings necessary to overcome the statutory presumption of validity to which the mark was entitled and to support the declaration; (2) the declaratory judgment failed to specify the category of goods or services with respect to which the mark is ineligible for protection and thus is overly broad; and (3) the declaratory judgment was unsupported by the pleadings as to Cinaruco because Safehouse never asserted a claim for declaratory judgment against Cinaruco.

*1. Necessity of jury findings to overcome presumption and support declaration*

Hot–Hed argues that the jury's negative answer to question one "is not a finding by a preponderance of the evidence that 'Habitat' is not eligible for protection as a mark because the special issue placed the burden of proving eligibility for protection on Hot–Hed." Safehouse first contends that Hot–Hed failed to preserve this argument. However, Hot–Hed filed an alternative jury charge, which provided that Safehouse bore the burden of proving that the mark "Habitat" was ineligible for protection as a trademark.

█ We conclude that Hot–Hed's submission of its alternative jury charge preserved this argument. *See* Tex.R. Civ. P.

274 ("A party objecting to a charge must point out distinctly the objectional matter.... Any complaint as to a question, definition, or instruction ... is waived unless specifically included in the objections").

Hot–Hed essentially argues that the jury finding to question number one is insufficient to support the declaratory judgment because the question failed to place the burden of proving eligibility on Safehouse and because the evidence was insufficient to support the jury's conclusion.[6] Safehouse contends that the "presumption of validity" that arises from a Texas trademark registration does not shift the burden of proof to the party challenging the validity of the mark, it merely shifts to the challenging party the burden of producing or going forward with the evidence; once some evidence is produced, the presumption disappears and the burden of proof remains on Hot–Hed. Safehouse argues that Hot–Hed failed to carry its burden of persuasion that the "habitat" mark was eligible for protection, and the jury finding that it was not eligible sufficiently supported the trial court's declaratory judgment. Thus, Safehouse was not required to procure additional jury findings to overcome the presumption.

To determine whether the evidence is legally sufficient to support a finding, we review the entire record, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then it is legally sufficient to support the finding. *See id.* In reviewing the factual sufficiency of the evidence, we consider all the evidence and set the finding aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). Whether reviewing the evidence for legal or factual sufficiency, we assume that jurors decided questions of credibility or conflicting evidence in favor of the finding if they reasonably could do so. *See City of Keller*, 168 S.W.3d at 819–20. We do not substitute our judgment for that of the trier-of-fact if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

■ The Texas Business and Commerce Code provides that:

A certificate of registration issued by the secretary of state under this chapter, or a copy of it certified by the secretary of state, is admissible in evidence as prima facie proof of

(1) the validity of the registration;

(2) the registrant's ownership of the mark; and

---

6. Hot–Hed does not challenge the jury's finding that the "habitat" mark was not eligible for protection in its first issue. However, in its argument regarding the appropriateness of attorney's fees, it contends that the evidence was legally and factually insufficient because:

> [T]he record establishes that (1) Hot–Hed was the first to use the "Habitat" mark to market inflatable welding enclosures and has used the mark continuously for twenty years; (2) Hot–Hed secured a federal registration for the same mark ...; (3) the Texas Secretary of State concluded that Hot–

Hed's mark is eligible for protection, as evidenced by the fact that Hot–Hed received a Texas registration; (4) the district court denied Safehouse's request for summary judgment, concluding that the case presented a close enough question that resolution by a jury was required; and (5) two of the jurors in this case agreed with Hot–Hed that its mark was eligible for protection.

Therefore, we address the legal and factual sufficiency of the evidence to support the jury's finding in this issue.

(3) the registrant's exclusive right to use the mark in commerce in this state in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated in the certificate.

TEX. BUS. & COM.CODE ANN. § 16.15(c) (Vernon 2002). "Registration creates a rebuttable presumption that the party registering the mark is the owner thereof, and that the registration is valid and exclusive to the registrant." *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 489 (Tex.App.-Fort Worth 1999, no pet.). "A mark, valid and exclusive to the registrant, is nothing more than constructive notice in this state of the registrant's claim of ownership." *Id.* at 489 n. 5. (citing TEX. BUS. & COM.CODE ANN. § 16.15(b)). A rebuttable presumption shifts the burden of producing evidence to the party against whom it operates. *Id.* at 489 (citing *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993)). Once evidence contradicting the presumption has been offered, the presumption is extinguished and shall not be weighed or treated as evidence, and the presumption has no effect on the burden of persuasion. *Id.* (citing *Saenz*, 873 S.W.2d at 359).

Here, the presumption that arose from Hot–Hed's evidence that "habitat" was a registered trademark in Texas was that Hot–Hed was the owner of the "habitat" mark and that the registration was valid and exclusive to it.[7] *See* TEX. BUS. & COM. CODE ANN. § 16.15(c)(3); *All Am. Builders*, 991 S.W.2d at 489. At trial, Safehouse presented evidence that the term "habitat"

had been used since the 1960s as a generic term referring to welding enclosures and that multiple companies had used the term "habitat" to describe their welding enclosure. This evidence was sufficient to rebut the presumption that the registration of the "habitat" mark was valid and that the mark was protectable at the time Hot–Hed sought registration. Thus, the presumption was extinguished and the burden of persuading the jury that the term "habitat" was eligible for protection remained with Hot–Hed. *See All Am. Builders*, 991 S.W.2d at 489.

 The elements in common law trademark infringement under Texas law are the same as those under federal trademark law. *Id.* at 488. Thus the party seeking to establish trademark infringement must first establish that the name it seeks to protect is eligible for protection. *Id.* at 488–89 (citing *Union Nat'l Bank, Laredo v. Union Nat'l Bank, Austin*, 909 F.2d 839, 844 (5th Cir.1990)). Whether a word or phrase is eligible for protection is determined by the category to which is belongs: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary. *Id.* at 489 (citing *Union Nat'l Bank, Laredo*, 909 F.2d at 844). Generic terms are never eligible for protection, whereas descriptive terms may only be protected after the party seeking to establish infringement provides proof that the term for which it seeks protection has a secondary meaning.[8] *Id.*

 At trial, Hot–Hed produced evidence that it had used the term "habitat"

---

7. Hot–Hed did not obtain a federal registration of the term "Habitat." Therefore, we do not address the presumption under the federal statutory scheme.

8. Suggestive and arbitrary or fanciful terms are protectable without proof of secondary meaning. *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 489

(Tex.App.-Fort Worth 1999, no pet.) (citing *Union Nat'l Bank, Laredo v. Union Nat'l Bank, Austin*, 909 F.2d 839, 844 (5th Cir.1990) and *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790–91 (5th Cir.1983)). There is no suggestion in this case, however, that the term "habitat" is suggestive, arbitrary, or fanciful.

for twenty years in connection with its inflatable welding enclosures, that it had previously obtained federal registration of the "habitat" mark, and that it currently held a Texas registration of the mark. It also presented Wardlaw's testimony that he was the first one to use the term as it relates to welding enclosures in the 1990s. However, Safehouse presented copious evidence that the term "habitat" had been in use to describe welding enclosures generally for decades before Hot–Hed claimed it created and began using the term, including numerous patent applications and other instances of use. This evidence was sufficient to allow reasonable and fair-minded jurors to conclude that "habitat" was ineligible for protection.

After considering the evidence introduced at trial and the jury instructions on when a word or phrase is eligible for trademark protection, the jury concluded that "habitat" was not eligible for trademark protection. To reach this finding, the jury necessarily had to conclude that the mark was either generic or descriptive with no secondary meaning. *See id.*, 991 S.W.2d at 489; *see also Union Nat'l Bank, Laredo*, 909 F.2d at 844. The jury's finding was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *see also City of Keller*, 168 S.W.3d at 819–20 (holding that we assume that jurors decided questions of credibility or conflicting evidence in favor of finding if they reasonably could do so). We conclude that this finding was sufficient to support the trial court's declaration that the mark was ineligible for protection under Texas and federal law.

2. *Specificity of declaration*

Hot–Hed also argues that the trial court's declaration was overbroad because "no basis exists for a declaration that the "Habitat" mark is ineligible for protection with respect to any product or service other than welding enclosures." As Safehouse points out in its brief, although the term "habitat" has been used as a registered trademark by third parties for non-welding goods like wine, herbicide, and fishing equipment, the judgment here does not adjudicate the use of the term in any of those contexts. *See Stark v. Bencken-stein*, 156 S.W.3d 112, 118 (Tex.App.-Beaumont 2004, pet. denied) (stating in declaratory judgment context that "a trial court's declarations do not prejudice the rights of any person not a party to the proceeding"). Thus, we determine that the trial court's judgment was limited to a declaration that "habitat" is not eligible for trademark protection in connection with welding enclosures and any related accessories or other items, and we modify the judgment to reflect the proper scope of the declaration. *See Lee v. O'Leary*, 742 S.W.2d 28, 33 (Tex.App.-Amarillo 1987) ("Courts of Appeals have the power to modify the amount of recovery and reform a judgment to conform with the pleadings and evidence."), *rev'd on other grounds, Lee v. Key West Towers, Inc.*, 783 S.W.2d 586 (Tex.1989); *see also State Nat'l Bank v. Farah Mfg. Co.*, 678 S.W.2d 661, 697 (Tex.App.-El Paso 1984, writ dism'd by agr.) (holding same); *Wenk v. City Nat'l Bank*, 613 S.W.2d 345, 353 (Tex.Civ.App.-Tyler 1981, no writ) (holding same).

We modify the trial court's declaratory judgment to state that "the term 'habitat' is not eligible as a trademark under Texas or Federal law, namely the Lanham Act, Title 15 of the United States Code, *when used in connection with welding enclosures and any related accessories or items.*"

We overrule Hot–Hed's first issue.

**Result of Declaratory Judgment**

In its first issue on cross-appeal, Safehouse argues that the trial court erred in

failing to order the cancellation of Hot–Hed's Texas trademark registration and in not stating that the term "habitat" "has become incapable of serving as a mark under section 16.16(a)(4)(E) of the Texas Business and Commerce Code." In its second issue, Safehouse argues that the trial court erred in failing to direct the USPTO to dismiss Hot–Hed's proceedings before that office, or alternatively, in failing to order Hot–Hed to abandon those proceedings.

## A. Cancellation of Hot–Hed's Texas Trademark Registration

[24] In its counterclaim, Safehouse sought cancellation of Hot–Hed's Texas registration of the term "habitat" as a trademark. It argues on appeal that the trial court erred in refusing to grant relief on this claim. The Business and Commerce Code provides that:

The secretary of state shall cancel

. . . .

(4) a registration concerning which a district or appellate court has rendered a final judgment, which has become unappealable, cancelling the registration or finding that

(A) the registered mark has been abandoned;

(B) the registrant under this chapter or under a prior act is not the owner of the mark;

(C) the registration was granted contrary to the provisions of this chapter;

(D) the registration was obtained fraudulently; or

(E) the registered mark has become incapable of serving as a mark.

TEX. BUS. & COM.CODE ANN. § 16.16(a)(4) (Vernon 2002); *All Am. Builders*, 991 S.W.2d at 489 n. 5.

Safehouse presented evidence at trial that the term "habitat" was used generally to refer to welding enclosures. We have already concluded that this evidence was sufficient to support the jury's conclusion, and we have likewise concluded that Hot–Hed's arguments that Safehouse failed to obtain the proper jury findings are unavailing. The jury's finding that the term "habitat" is ineligible for trademark protection establishes that the mark has become incapable of serving as a mark. *See All Am. Builders*, 991 S.W.2d at 488–89 ("The threshold issue is whether the word or phrase is initially eligible for protection."). We conclude that Safehouse was entitled to an order from the trial court cancelling Hot–Hed's Texas registration of the mark "habitat" on the ground that it is no longer capable of serving as a mark. *See* TEX. BUS. & COM.CODE ANN. § 16.16(a)(4)(E).

Therefore, we modify the judgment to include an order cancelling Hot–Hed's Texas registration of the mark "habitat."

We sustain Safehouse's first issue on cross-appeal.

## B. Dismissal of Proceedings before USPTO

Safehouse also argues that the trial court erred in failing to order the USPTO to dismiss Hot–Hed's petition to cancel Safehouse's federal registration of "Safehouse Habitats" and to deny Hot–Hed's application for federal registration of the mark "habitat," or, alternatively, in failing to order Hot–Hed to abandon those proceedings.

However, Safehouse never made any affirmative claim for such relief in its pleadings. Texas Rule of Civil Procedure 301 requires that the "judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict." TEX.R. CIV. P. 301; *see also Stoner v. Thompson*, 578 S.W.2d 679, 682–84 (Tex. 1979) (holding that judgment cannot grant relief that is not contained in party's pleadings and that general prayer for relief

cannot "enlarge a pleading to the extent that it embraces an entirely different cause of action"). Because Safehouse did not file pleadings requesting relief on these grounds, it cannot now complain that the judgment does not grant that relief.

We overrule Safehouse's second issue on cross-appeal.

## Attorney Fees

In its second issue, Hot–Hed argues that the trial court erred in awarding Safehouse attorney's fees under the UDJA and that there was no basis for entering judgment against Cinaruco because Safehouse never pleaded any counterclaims against Cinaruco.

We review a trial court's award of attorney's fees under the UDJA for an abuse of discretion. *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 454 (Tex.App.-Dallas 2010, pet. denied); *Lesikar v. Moon*, 237 S.W.3d 361, 375 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law. *Lesikar*, 237 S.W.3d at 375.

*1. Safehouse's entitlement to fees under the UDJA*

■ Section 37.009 of the UDJA provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 2008). However, a party cannot use the UDJA to obtain·an otherwise impermissible attorney's fee. *RIHR*, 308 S.W.3d at 454. "It is an abuse of discretion to award attorney's fees under the Uniform Declaratory Judgment Act when the statute is relied upon solely as a vehicle to recover attorney's fees." *Id.* (citing *Tex. State Bd. of Plumbing Exam'rs v. Assoc. Plumbing–Heating–Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex.App.-Austin 2000,

pet. dism'd)); *see also City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 392 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that party may not use declaratory judgment action to seek same relief afforded under another of its causes of action to obtain otherwise impermissible attorney's fees). We note that the parties stipulated to the amount of attorney's fees, and Hot–Hed does not contend that they were unreasonable or unnecessary—only that Safehouse was not entitled to any attorney's fees at all.

We have already addressed Hot–Hed's arguments that Safehouse's declaratory judgment counterclaim was improper because it did not seek affirmative relief other than the relief that was already available through other claims pending before the trial court, and we concluded that Safehouse's UDJA claim was proper. Safehouse succeeded on its declaratory judgment claim. Therefore, we conclude that the trial court did not abuse its discretion in awarding Safehouse attorney's fees.

*2. Safehouse's entitlement to fees from Cinaruco*

■ We likewise conclude that the trial court did not err in granting attorney's fees jointly and severally against Hot–Hed and Cinaruco. We observe that Safehouse's last amended counterclaim was filed before the amended petition adding Cinaruco as a plaintiff and that Hot–Hed and Cinaruco's subsequent pleadings were styled as "plaintiffs'" response to the counterclaims. Furthermore, jury question number ten explicitly listed both Hot–Hed and Cinaruco as possible parties against whom Safehouse could collect attorney's fees. Neither plaintiff entered any objection to this instruction. Thus, this issue was tried by consent even though it was not raised in the pleadings. *See* TEX.R. CIV. P. 67 ("When issues not raised by the pleadings are tried by ex-

press or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

### 3. Trial court's ability to sign award for attorney's fees

■ Hot–Hed also argues that the award of attorney's fees was improper in this case because the final judgment, including the award of attorney's fees, was not signed by the judge who presided over the trial.[9] This argument is likewise unavailing. The authority cited by Hot–Hed involved a situation in which a second judge entered judgment after the first judge heard all of the evidence during a bench trial. See W.C. Banks, Inc. v. Team, Inc., 783 S.W.2d 783, 786 (Tex.App.-Houston [1st Dist.] 1990, no writ). That case is distinguishable from the present case. Here, the trial was to a jury and there were no facts that needed to be determined by the trial court before entering judgment.

We overrule Hot–Hed's second issue.

### 4. Trial court's obligation to file findings of fact and conclusions of law

■ In its third issue, Hot–Hed argues that the trial court erred in refusing its timely request pursuant to Texas Rule of Civil Procedure 297 to issue findings of fact and conclusions of law on the attorney's fees award. Safehouse argues that the trial court was not required to enter findings of fact and conclusion of law on this issue. We agree.

Texas Rule of Civil Procedure 296 entitles a party to request that a trial court file findings of fact and conclusions of law "in any case tried … without a jury." Tex.R. Civ. P. 296. Rule 297 provides the deadlines for trial courts to file its findings and conclusions. Tex.R. Civ. P. 297. Those rules do not require the trial court

in this case to issue findings of fact and conclusions of law. Here, the trial was to a jury. Furthermore, there were no determinations of fact that were required, as the parties stipulated the amount of reasonable and necessary attorney's fees.

We overrule Hot–Hed's third issue.

### 5. Safehouse's entitlement to post-judgment interest

In its third issue on cross-appeal, Safehouse argues that the trial court erred in failing to specify an award of post-judgment interest in the judgment. Hot–Hed contends that the award of post-judgment interest is inappropriate because Safehouse is not entitled to any attorney's fees. We have already determined, however, that the trial court did not abuse its discretion in awarding attorney's fees.

■ The Texas Finance Code provides that "[a] money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment." Tex. Fin.Code Ann. § 304.001 (Vernon 2006); see also Office of Att'y Gen. of Tex. v. Lee, 92 S.W.3d 526, 528 (Tex.2002) (per curiam) (holding under predecessor statute that code "does not require, as a prerequisite for accruing interest, that judgments specifically include an award of post-judgment interest"); RAJ Partners, Ltd. v. Darco Constr. Corp., 217 S.W.3d 638, 653 (Tex.App.-Amarillo 2006, no pet.) ("[P]ostjudgment interest is mandated by statute, and is recoverable even if the trial court's judgment does not mention it."). Thus, Safehouse is entitled to post-judgment interest at a rate of five percent compounded annually. See Tex. Fin.Code Ann. § 304.003(c)(2) (Vernon 2006) (providing that postjudgment interest rate is five percent per year if prime rate as published

---

9. The Hon. Levi Benton presided over the trial, but left the bench before entering final judgment. He was succeeded by the Hon. Steven Strickland, who entered the final judgment.

by Board of Governors of Federal Reserve System is less than five percent); *id.* § 304.006 (Vernon 2006) (providing that post-judgment interest compounds annually).

Accordingly, we modify the judgment to clarify that Safehouse is entitled to post-judgment interest by adding the following sentence: Safehouse shall also recover from plaintiffs, jointly and severally, post-judgment interest at a rate of five percent, compounded annually.

We sustain Safehouse's third issue on cross-appeal.

## Charge Error

■ In its fourth issue, Hot–Hed argues that the trial court erred in declining to submit Hot–Hed's proposed special issue on statutory trademark infringement to the jury.

We review a trial court's decision to refuse an instruction in its charge for an abuse of discretion. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 456 (Tex.2006). "If an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *Louisiana–Pacific Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex.1998) (per curiam); *see also* Tex.R. Civ. P. 278 (addressing submission of questions, definitions, and instructions to jury); *Dew*, 208 S.W.3d at 456 ("A party is entitled to a jury question, instruction, or definition if the pleadings and evidence raise an issue."). A trial court's error in refusing an instruction is reversible, however, only if it "probably caused the rendition of an improper judgment." *Dew*, 208 S.W.3d at 456; *see also* Tex.R.App. P. 44.1(a) (addressing reversible error in civil cases).

Assuming, without deciding, that Hot–Hed was entitled to submission of the charge in the form it requested, Hot–Hed cannot show that any alleged error probably caused the rendition of an improper judgment. As we have already concluded, the judgment was properly based on the jury's conclusion that the mark "habitat" is not eligible for trademark protection. This was a threshold consideration to all of Hot–Hed's claims against Safehouse, and Hot–Hed has presented no evidence that the jury might have decided that question differently had the charge not been submitted in the conditional format used by the trial court.

We overrule Hot–Hed's fourth issue.

## Conclusion

We modify the judgment of the trial court in the following manner:

● We modify the trial court's declaration to state that "the term 'habitat' is not eligible as a trademark under Texas or Federal law, namely the Lanham Act, Title 15 of the United States Code, *when used in connection with welding enclosures and any related accessories or items.*"

● We add the following sentence following the above sentence: "The Court orders that Hot–Hed's Texas registration of the term "habitat" when used in relation to inflatable welding enclosures is cancelled."

● We add the following sentence following the award of attorney's fees and court costs: "Safehouse shall also recover from plaintiffs, jointly and severally, post-judgment interest at a rate of five percent, compounded annually."

We affirm as modified.