Opinion issued May 28, 2026



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-25-00445-CV

_____

**ABELARDO G. GONZALEZ, Appellant**

**V.**

**NELSON S. EBAUGH, Appellee**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-35747**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's May 28, 2025 order declaring appellant Abelardo G. Gonzalez a vexatious litigant and imposing a prefiling order. *See* TEX. CIV. PRAC. & REM. CODE § 11.054 (vexatious litigant); *id.*

§ 11.101(a), (c) (prefiling order; authorizing interlocutory appeal of prefiling order).

On appeal, Gonzalez raises two issues. In his first issue, he argues that the trial court abused its discretion by denying his motion for a bench warrant to appear at the hearing on the motion to declare him a vexatious litigant. In his second issue, he argues that the trial court erred by concluding that he did not have a reasonable probability of prevailing in the litigation and entering a prefiling order. We lack jurisdiction over his first issue because no statute authorizes an interlocutory appeal from the denial of a motion for a bench warrant. Gonzalez's second issue lacks merit.

We affirm the interlocutory order of the trial court on the second issue.

## Background

In 2011, a jury convicted Gonzalez of three counts of aggravated robbery and three counts of engaging in organized criminal activity based on the robberies of three restaurants between December 2007 and January 2008. *Gonzalez v. State*, No. 04-10-00123-CR, 2011 WL 3849393, at *1 (Tex. App.—San Antonio Aug. 31, 2011, pet. ref'd) (mem. op.; not designated for publication). Gonzalez was sentenced to 30 years in prison on each count, to be served concurrently. *Id.*

In 2017, Gonzalez sued Webb County Sheriff's Office Commander Ponce Trevino in Webb County in a suit he filed pro se. In that suit, he alleged that when

2

he was in the custody of Webb County jail, the Mexican Mafia had threatened his life, but no one from Webb County informed him of the danger. He alleged that once he was transferred to TDCJ in 2013, he was assaulted by other inmates and suffered serious injuries. In January 2019, the Webb County trial court granted default judgment in Gonzalez's favor. Gonzalez, who was in TDCJ custody, sent Trevino a letter seeking to enforce the default judgment by requesting information about the gang affiliation of five men, who Gonzalez believed had made death threats against him when they were held in the Webb County jail.

According to Trevino, the letter, marked "Legal Mail Legal Notice Enclosed" included "white particles," tested positive for cocaine using a "Narc Kit," and caused a K9 to alert. Trevino emailed Sergeant Joe Mireles of the McConnell Unit in Beeville, where Gonzalez was housed, and "accused [Gonzalez] of mailing him a letter that contained cocaine." Mireles, "a member of the Security Threat Group, which investigates gang activity in the prison," opened an investigation. According to Gonzalez, any "inmate who talks to a member of that group is seen by the other inmates as a snitch." Gonzalez maintains that an inmate overheard a guard telling him to report to Sgt. Mireles, and as a result, other prisoners assaulted him. In addition, prison officials prohibited him from mailing "sealed, uninspected special or media correspondence," or any "legal correspondence, with the exception of correspondence to [his] attorney of record."

Months later, after further laboratory testing, the Texas Department of Public Safety issued a laboratory report stating: "No controlled substance detected."

After the assault and imposition of the mail restrictions, Gonzalez, pro se, sued Trevino and Webb County in federal district court. In October 2020, a federal magistrate judge appointed Nelson S. Ebaugh to represent Gonzalez pro bono.

Ebaugh filed an amended petition and successfully defended Webb County's motion to dismiss. He advised Gonzalez "on the potential risks and benefits of proceeding to trial versus accepting a mediated settlement." These risks included Gonzalez's status as an incarcerated felon, his history of pro se litigation (including cases against law enforcement officers), and the legal challenges "inherent in his claims." In January 2022, Ebaugh sent a demand letter for the purpose of settlement, seeking $1,727,100.00 in damages, which included $303,000 for injuries Gonzalez allegedly sustained when inmates assaulted him for being a "snitch," $84,000 in lost profits because the legal mail restriction allegedly prevented him from asserting his rights against his brothers in a business dispute, $30,000 in mental anguish damages due to missed visits with his children, $1,251,000 in exemplary damages, attorney's fees, and prejudgment interest. The demand letter also sought non-monetary relief including information about the men who had threatened to kill Gonzalez when he was in Webb County jail, a retraction of the accusation that Gonzalez sent a controlled substance to the jail, and an

4

injunction to prohibit the defendants from falsely accusing Gonzalez of mailing a letter containing a controlled substance to the jail.

In February 2022, Gonzalez and Ebaugh attended mediation, and Gonzalez later accepted a settlement from Webb County that Ebaugh described as "reasonable," but Gonzalez characterized as insufficient, alleging that the settlement was "under [$]25,000 [when] the mediator said that the case in his opinion was worth at least $200,000 [e]specially if [Sgt.] Mireles testified" that Trevino did not want to press charges against Gonzalez.

About a month after the mediation, Ebaugh sent Gonzalez a letter, the first page of which appears in the appellate record. In the first page of the letter, Ebaugh states: "During the past eighteen months, it has been my pleasure to serve you as *pro bono* counsel . . . Unfortunately, I cannot represent you in trial or any further motions practice because it would unduly burden my legal practice." Ebaugh said he intended to file a motion to withdraw from the representation the following month, giving Gonzalez a little over five weeks to "locate another attorney to substitute in." In his affidavit, Ebaugh attested that he represented Gonzalez "until the case [that was settled] was dismissed with prejudice on July 20, 2022."

In June 2024, Gonzalez, pro se, sued Ebaugh for legal malpractice and breach of fiduciary duty, alleging that Ebaugh misled him to accept the settlement offer, failed to take certain actions that Gonzalez thought were necessary for his

5

case, participated in court-ordered mediation before a magistrate judge (who, in 2020, recused himself from the case), and withdrew from representation after settlement, telling Gonzalez he could find another attorney but not indicating whether an attorney would be appointed for him. In addition to malpractice and breach of fiduciary duty, Gonzalez also sought a declaratory judgment on four issues, three of which raised questions about the settlement agreement with Webb County, and the fourth of which questions how much money Ebaugh received for his pro bono work.

Gonzalez filed a first supplemental original petition in March 2025, in which he added five requests for declaratory judgment. He sought a declaration that the letter of engagement with Ebaugh was a contract, two declarations regarding whether Ebaugh "violated" the contract, a declaration whether Ebaugh was compensated for representing Gonzalez, and a declaration about when Ebaugh received the settlement proceeds from Webb County. A couple of weeks later, Gonzalez filed a second supplemental petition adding a request for injunctive relief, for Ebaugh to provide a letter saying that the letter Gonzalez sent to Trevino contained no powder of any kind.

Meanwhile, on March 17, 2025, Ebaugh filed a motion to declare Gonzalez a vexatious litigant arguing that there was not a reasonable probability that Gonzalez would prevail in the case against Ebaugh and that, in the seven preceding

years, Gonzalez had commenced, prosecuted, or maintained at least five litigations, pro se, that were finally determined adversely to Gonzalez or found to be frivolous or groundless. Ebaugh attached to his motion the following evidence: (1) a hard copy of the electronic docket in a case Gonzalez filed, pro se, against Rosalinda Gonzalez, (2) the order appointing Ebaugh to represent Gonzalez pro bono, (3) Ebaugh's notice of appearance after appointment, (4) the First Amended Complaint Ebaugh drafted and filed for Gonzalez, (5) an objection to the report and recommendation of the magistrate judge on defendants' motions to dismiss, (6) the federal district court's order on defendants' motions to dismiss that adopted the magistrate's report in part, (7) his affidavit, and (8) Gonzalez's original petition against Ebaugh.

Ebaugh argued that the acts or omissions alleged by Gonzalez were not breaches of his professional obligations as an attorney, but represented, instead, his exercise of professional judgment. Ebaugh argued there was no evidence of breach of duty or proximate cause. He asserted that Gonzalez could not fracture his claims into malpractice and breach of fiduciary duty because all of his claims concerned allegations of negligence. And he explained that three of the requested declarations do not pertain to him because he is not a party to the settlement agreement with Webb County. Further, the fourth requested declaration was a question of fact, which is not appropriate for a declaratory judgment. Finally, in a reply to

Gonzalez's response to the motion, Ebaugh argued that because he volunteered and was appointed to represent Gonzalez by a federal magistrate judge, he was immune from Gonalez's suit under federal law. *See* 42 U.S.C. § 14503(a) ("Limitation on Liability for Volunteers").

In his first response to the motion, Gonzalez challenged Ebaugh's statements that there was no reasonable probability he would succeed and asked the court to take judicial notice of his live pleadings, which he asserted consisted of his original petition, his first and second supplemental petitions, and the exhibits attached to them. Gonzalez did not attach any evidence to his reply.

Gonzalez filed a first amended original petition by placing it in the prison mailbox on May 19, 2025, and it was received by the trial court on May 27, 2025, the day before the vexatious litigant hearing. Gonzalez attached the following exhibits to his first amended petition: (1) the 2019 default judgment against Trevino, (2) Trevino's email to TDCJ, (3) the mail restriction imposed by TDCJ, (4) the Webb County Offense and Incident Report regarding the letter, (5) pro se subpoena to TDCJ employee for email from Trevino to TDCJ, (6) the first page of Ebaugh's letter informing Gonzalez of his intent to file a motion to withdraw from representation, (7) the laboratory report showing the letter from Gonzalez did not contain a controlled substance, (8) an affidavit from Trevino in the 2017 suit, (9) letter Gonzalez sent to Trevino, (10) excerpt from appellate brief from a case

filed in 2015 case also relating to the alleged death threats, (11) Ebaugh's demand letter to Trevino and Webb County, (12) the order appointing Ebaugh to represent Gonzalez pro bono, and (13) the July 2020 order of recusal from Magistrate Judge Kazen.

Gonzalez also filed a second response to the vexatious litigant motion, in which he asked the trial court "to take judicial notice of all the filings in the record to include but not limited to" his affidavit, the first amended petition, and affidavits from two of his relatives. In his unsworn declaration, Gonzalez states that Ebaugh failed to take various actions that Gonzalez believed were necessary (including seeking discovery or contempt) and that Ebaugh did not provide information that Gonzalez believed was necessary. His relatives' affidavits recited what Gonzalez had told them and details about Gonzalez's lost business opportunity.

Gonzalez also filed a motion seeking to appear in person at the vexatious litigant hearing, which was not granted. After a non-evidentiary hearing at which Gonzalez did not appear, the trial court granted Ebaugh's motion, entered an order finding Gonzalez is a vexatious litigant, and entered a prefiling order.

Gonzalez timely filed a notice of interlocutory appeal.

**Analysis**

On appeal, Gonzalez raises two issues. First, he argues that the trial court abused its discretion by denying his motion for bench warrant to participate in the

9

hearing on the vexatious litigant motion. Second, he argues that the court erred by finding he did not have a reasonable probability of prevailing in the litigation and entering the prefiling order.

## I. This Court lacks jurisdiction to consider Gonzalez's challenge to the denial of a bench warrant.

This Court generally has jurisdiction only over appeals from final judgments and specific interlocutory orders that the legislature has designated as appealable orders. *See CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *see also* TEX. CIV. PRAC. & REM CODE § 51.014. Importantly, statutes authorizing interlocutory appeals are strictly construed because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *See CMH Homes*, 340 S.W.3d at 447.

Courts, including ours, have concluded that an interlocutory appeal of a vexatious litigant order is authorized by section 11.101(c) of the Texas Civil Practice and Remedies Code. *Diogu v. Melanson*, No. 01-23-00164-CV, 2024 WL 971671, at *2 (Tex. App.—Houston [1st Dist.] Mar. 7, 2024, no pet.) (mem. op.) (citing *Manning v. Dallas Indep. Sch. Dist.*, No. 08-20-00211-CV, 2021 WL 365914, at *2 (Tex. App.—El Paso Feb. 3, 2021, no pet.) (holding vexatious-litigant order is interlocutory and subject to same time deadlines as other interlocutory appeals)); *see Margetis v. Bayview Loan Serv., L.L.C.*, 553 S.W.3d 643, 644 (Tex. App.—Waco 2018, no pet.) (same); *Restrepo v. Alliance Riggers &*

*Constr.*, No. 08–15–00011–CV, 2015 WL 999950, at *2 (Tex. App.—El Paso Mar. 4, 2015, no pet.) (mem. op.) (same); *see also* TEX. CIV. PRAC. & REM. CODE §11.101(c) ("A litigant may appeal from a prefiling order entered under Subsection (a) designating the person a vexatious litigant.").

The denial of a bench warrant for a hearing on a motion to designate a person a vexatious litigant is not the same as the granting of a motion and entry of a prefiling order. The denial of a bench warrant in this situation is not an appealable interlocutory order. *See Matter of Marriage of Hernandez & McCreary*, No. 12-17-00397-CV, 2018 WL 524864, at *2 (Tex. App.—Tyler Jan. 24, 2018, no pet.) (mem. op.) ("Neither the denial of a motion for bench warrant nor the denial of a request for the appointment of an attorney are appealable interlocutory orders or final judgments."). Accordingly, we conclude that we lack jurisdiction over Gonzalez's first issue.[1]

## II. The trial court did not abuse its discretion by entering the prefiling order.

"Chapter 11 of the Texas Civil Practice and Remedies Code addresses vexatious litigants—persons who abuse the legal system by filing numerous, frivolous lawsuits." *In re Douglas*, 333 S.W.3d 273, 282 (Tex. App.—Houston [1st

---

[1] Throughout his briefing in this Court, Gonzalez has asserted that he was excluded from participation in the vexatious litigant hearing. Gonzalez requested only a bench warrant not participation by Zoom or telephone. The trial court stated on the record at the vexatious litigant hearing that it would have permitted his participation by Zoom if he had so requested.

Dist.] 2010, pet. denied); *see* TEX. CIV. PRAC. & REM. CODE §§ 11.001–.104. We review a trial court's order declaring that a plaintiff is a vexatious litigant and subject to prefiling requirements for an abuse of discretion. *See Douglas*, 333 S.W.3d at 282–83. A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or principles. *Downer v. Aquamarine OperatorsInc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Chapter 11 of the Texas Civil Practice and Remedies Code establishes criteria for finding that a plaintiff is a vexatious litigant. TEX. CIV. PRAC. & REM. CODE § 11.054.

> A court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:
>
> (1)    the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:
>
> (A)    finally determined adversely to the plaintiff;
>
> (B)    permitted to remain pending at least two years without having been brought to trial or hearing; or
>
> (C)    determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure . . . .

*Id.* § 11.054(1).

12

At the hearing on the motion to declare a plaintiff a vexatious litigant, the "court may consider any evidence material to the ground of the motion, including: (1) written or oral evidence; and (2) evidence presented by witnesses or by affidavit." *Id.* 11.053(b).

Because a trial court may exercise its discretion to declare a party a vexatious litigant only if the defendant has made the required showings, we may review the trial court's implied or express findings on those matters for legal and factual sufficiency. *See Jones v. Markel*, No. 14-14-00216-CV, 2015 WL 3878261, at *5 (Tex. App.—Houston [14th Dist.] June 23, 2015, pet. denied) (mem. op.); *Leonard v. Abbott*, 171 S.W.3d 451, 459 (Tex. App.—Austin 2005, pet. denied). In reviewing a legal sufficiency challenge, a no-evidence challenge fails if there is more than a scintilla of evidence to support the finding. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). In reviewing a factual sufficiency challenge, we set aside the trial court's decision only if its ruling is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In this appeal, Gonzalez challenges the trial court's finding that there was not a reasonable probability that he would prevail in the litigation against Ebaugh.[2]

---

[2] Gonzalez did not challenge the trial court's findings about his pro se litigation history. The trial court found that in the seven years preceding Ebaugh's motion, Gonzalez "commenced, prosecuted, or maintained at leas five litigations as a pro

13

Thus, we must consider Gonzalez's three claims: legal malpractice, breach of fiduciary duty, and declaratory judgment.

**A.  Gonzalez did not have a reasonable probability of prevailing on his claim for legal malpractice.**

"A lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney." *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989). "To prove a legal-malpractice claim, the client must establish that: (1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). "A lawyer can be negligent and yet cause no harm." *Id.* "And, if the breach of a duty of care does not cause harm, no valid claim for legal-malpractice exists." *Id.*

se litigant" that were "finally determined adversely" to him or found to be "frivolous or groundless."  The court found that those litigations included the following seven cases:

1. *Gonzalez v. Sarabia*, 720 Fed. Appx. 213 (5th Cir. April 23, 2018);
2. *In re Gonzalez*, 2018 WL 1610916 (Tex. App.—San Antonio April 4, 2018, orig. proceeding);
3. *Gonzalez v. Alaniz*, 2022 WL 849776, at *1 (Tex. App.—San Antonio March 23, 2022, no pet.) (mem. op.);
4. *Gonzalez v. Degollado*, No. 5:20-CV-30, 2021 WL 5564430, at *1 (S.D. Tex. Nov. 29, 2021);
5. *Gonzalez v. Moore*, 2022 WL 22607174 (S.D. Tex. Jan. 18, 2022);
6. *Gonzalez v. Gonzalez*, 2024 WL 1079234, at *1 (Tex. App.—San Antonio March 13, 2024, no pet.) (mem. op.); and
7. *Gonzalez v. Gonzalez*, No. 04-23-00669-CV, 2025 WL 611594, at *1 (Tex. App.—San Antonio Feb. 26, 2025, no pet.) (mem. op.).

"As in other negligence cases, a legal-malpractice plaintiff must prove that his or her lawyer's negligence was the proximate cause of cognizable damage." *Id.* at 402. "In every case, the plaintiff must supply a causal link between the attorney's alleged negligence and the client's damages." *Id.* at 404. "Whether a negligent lawyer's conduct is the cause in fact of the client's claimed injury requires an examination of the hypothetical alternative: What should have happened if the lawyer had not been negligent?" *Id.*

"When a legal-malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Id.* at 401 (citing *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013)). Traditionally, this is shown by recreating the underlying case, or proving a "case-within-a-case." *See id.* "Where the injury claimed does not depend on the merits of the underlying action, however, the case-within-a-case methodology does not apply." *Id.* For example, when the alleged malpractice happens in the context of a settlement, evidence of settlements made under comparable circumstances may take the place of the "case-within-a-case." *Elizondo*, 415 S.W.3d at 270.

In this case, the trial court found, in its order, that there was no evidence that Ebaugh breached any duty to Gonzalez and that the outcome of the litigation was favorable to Gonzalez. These statements are supported by the record, which shows

15

that Ebaugh successfully defended motions to dismiss, amended Gonzalez's petition to present a strong legal position, sent a demand letter detailing the damages that Gonzalez alleged, and represented Gonzalez at mediation, after which Gonzalez accepted a settlement. The record also shows that Ebaugh did not withdraw from representation before the case was dismissed. Ebaugh's affidavit explains why he declined to pursue sanctions or contempt against Trevino for not attending the mediation (his counsel attended with full settlement authority) or the TDCJ employee from whom Gonzalez sought a copy of the email from Trevino to TDCJ (because it "would have been legally unsound"). Moreover, none of the exhibits attached to Gonzalez's amended petition are evidence that Ebaugh breached a duty to Gonzalez.[3] Because there is more than a scintilla of evidence to support the trial court's conclusion that Gonzalez lacked a reasonable probability of success, that evidentiary finding is supported by legally sufficient evidence. *See BMC Software Belgium*, 83 S.W.3d at 795. Because the evidentiary finding that Gonzalez lacked a reasonable probability of success is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust,

---

[3] There is also no evidence of causation or that the amount of Gonzalez's settlement was insufficient in comparison to other similar settlements. *See Elizondo v. Krist*, 415 S.W.3d 259, 270 (Tex. 2013) (expert testimony needed when malpractice suit alleges inadequacy of settlement); *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) (expert testimony needed when malpractice suit challenges strategic decisions made during litigation).

16

that evidentiary finding is supported by factually sufficient evidence. *See Cain*, 709 S.W.2d at 176.

**B.     Gonzalez did not have a reasonable probability of prevailing on his claim for breach of fiduciary duty.**

In his first amended petition, the live pleading at the time of the hearing and order, Gonzalez pleaded as his second cause of action "Breach of Fiduciary Duty and or Malpractice/Negligence" based on Ebaugh's alleged misrepresentations that Gonzalez contends convinced him to settle his claims. He also based this claim on Ebaugh's refusal to mail a check for the settlement proceeds to him in prison instead of insisting on using a wire transfer.

In Texas, a party is not permitted to "artfully recast a professional negligence" claim as breach of fiduciary duty or fraud. *Pitts v. Rivas*, 709 S.W.3d 517, 523–24 (Tex. 2025). This "anti-fracturing rule" requires that a plaintiff asserting claims for professional negligence and fraud or breach of fiduciary duty must allege facts "beyond what traditionally has been characterized as legal malpractice." *Id.* (citation omitted). Here, the gravamen of Gonzalez's claim for breach of fiduciary duty is that Ebaugh "failed to exercise the requisite degree of care or skill in the provision of professional services." *Id.* at 525.

Because this claim is barred by the anti-fracturing rule, the trial court's conclusion that Gonzalez lacked a reasonable probability of success is supported by the record.

**C.     Gonzalez did not have a reasonable probability of prevailing on his claim for declaratory judgment.**

On appeal, Gonzalez argues that the court abused its discretion by finding that he did not have a reasonable probability of prevailing on his declaratory judgment. He specifically asserts that the court did not address the five additional declarations he sought in his first supplemental petition.[4] These requested declarations were:

1.     whether the engagement letter is a contract,

2.     whether Ebaugh violated the engagement letter in any way,

3.     whether Ebaugh violated any professional or ethical rules governing the conduct of lawyers,

4.     whether Ebaugh received compensation for representing Gonzalez, and

5.     when Ebaugh received the settlement funds from Webb County.

The purpose of the Uniform Declaratory Judgments Act ("UDJA") is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . ." TEX. CIV. PRAC. & REM. CODE § 37.002(a), (b). "A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." *Id.* § 37.003(b). Under the UDJA, "[a] person interested under a . . . written contract, or other writings constituting a contract or whose rights, status, or

---

[4]     Ebaugh's appellate argument refers to the four requested declarations from Gonzalez's original petition.

other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004.

A party may pursue a declaratory judgment action "only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (citations omitted). "A declaratory judgment is therefore appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration." *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021); *see Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 727–28 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (same).

Fact issues in declaratory judgment proceedings may be tried and determined in the same manner that issues of fact are tried and determined in other civil actions. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 699 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 37.007). "The power to determine an issue of fact, however, does not concomitantly carry with it the power to render such a finding of fact as a

declaratory judgment." *Id.* (quotations omitted). "If a factual dispute is the only issue to be resolved, a declaratory judgment is not the proper remedy." *Hot-Hed*, 333 S.W.3d at 728.

In addition, the UDJA "is not available to settle disputes already pending before a court." *BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (quotations omitted). Ordinarily, "a declaratory judgment is improper if the relief requested is raised for the first time in an amended petition and merely addresses the same issues as were raised in the original petition." *Hot-Hed*, 333 S.W.3d at 728 (quotation omitted).

Gonzalez's first amended petition was his live pleading on May 28, 2025, when the court held the vexatious litigant hearing and entered its order granting the motion. In that pleading, Gonzalez sought eleven declarations under the UDJA:

1.  how much money Ebaugh received from the federal court,

2.  whether the engagement letter is a contract,

3.  whether Ebaugh violated the engagement letter in any way,

4.  whether Ebaugh violated any professional or ethical rules governing the conduct of lawyers,

5.  whether the payment Ebaugh received from the federal court "is and could be considered compensation for representing" Gonzalez,

6.  when Ebaugh received the settlement funds from Webb County, Texas,

7.  whether Ebaugh denied Gonzalez the right to appear at trial on July 25, 2022 by failing to disclose the trial setting,

8.   whether Ebaugh violated the court order appointing him by telling Gonzalez he would not do any more motion practice,

9.   whether Ebaugh complied with his duties as an attorney,

10.  whether Ebaugh caused damages to Gonzalez,

11.  whether Ebaugh "agreed to and promised to deliver a letter to plaintiff that the letter plaintiff mailed to Webb County Sheriff Deputy Trevino contain[ed] <u>NO POWDER</u> could be considered as a[n] oral contract."

Of these eleven requested declarations in the amended petition, only one was also in the original petition: "how much money Atty. Ebaugh received for the case if any." This is a question of fact for which the UDJA is not the proper remedy. *See Hot-Hed*, 333 S.W.3d at 728. The remaining ten declarations all address the same issues of alleged legal malpractice as were raised in the original petition. Thus, we conclude that under this Court's precedent, Gonzalez did not have a reasonable probability of prevailing on the ten requested declarations. *See id.* Accordingly, the trial court's conclusion that Gonzalez lacked a reasonable probability of success is supported by the record.

**D.   The trial court did not abuse its discretion by not addressing Gonzalez's request for injunctive relief.**

Finally, Gonzalez argues that the court abused its discretion by not addressing his request for injunctive relief to require Ebaugh to send him a letter stating the letter Gonzalez sent to Trevino contained "no powder." Injunctive relief is not a separate cause of action. *Riley v. Angelle*, No. 01-20-00590-CV, 2022 WL

3092892, at *8 n.4 (Tex. App.—Houston [1st Dist.] Aug. 4, 2022, no pet.) (mem. op.) (citing *Battista v. City of Alpine*, 345 S.W.3d 769, 776 (Tex. App.—El Paso 2011, no pet.)). Rather, "injunctive relief is an equitable remedy, and a party's right to such relief is dependent on his ability to establish a probable right of recovery through another claim or cause of action." *Id.*

## Conclusion

We overrule Gonzalez's second issue, and we affirm the order of the trial court.

Justice Susanna Dokupil

Panel consists of Justices Guerra, Caughey, and Dokupil.

22